# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CASE NO. 3:20-cv-366

| | | |
|---|---|---|
| NIRAV INGREDIENTS, INC. and ASH INGREDIENTS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | **WELLS FARGO BANK, N.A.'S** |
| v. | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |
| WELLS FARGO BANK, N.A. and JOHN DOE(S), | ) ) ) | **Preliminary Hearing Requested** |
| Defendants. | ) ) | |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves this Court for an Order dismissing Counts I – III of the Plaintiffs' Complaint for failure to state a claim against Wells Fargo upon which relief can be granted. As grounds in support of this motion, Wells Fargo provides the following:

## INTRODUCTION

As discussed below, Plaintiffs Nirav Ingredients, Inc. ("Nirav Ingredients") and Ash Ingredients, Inc. ("Ash Ingredients", together with Nirav Ingredients, "Plaintiffs") contend that Wells Fargo is liable for failing to protect Plaintiffs from being defrauded by a wire scheme perpetrated by an unidentified and unknown hacker (the "Hacker"). The claims against Wells Fargo are entirely without merit and should be dismissed on the basis of (i) preemption, (ii) lack of standing, and/or (iii) failure to state a claim.

## FACTUAL ALLEGATIONS

Plaintiffs Nirav Ingredients, Inc. ("Nirav Ingredients") and Ash Ingredients, Inc. ("Ash Ingredients", together with Nirav Ingredients, "Plaintiffs") contend that they were defrauded by an unidentified and unknown hacker (the "Hacker"). Specifically, Plaintiffs allege that the Hacker

sent Ash Ingredients an email from an email address that was similar to, but not associated with Nirav Ingredients, requesting payment for past due invoices. (Compl., ¶¶ 28-29). Pursuant to Hacker's email phishing scam, Hacker provided wiring instructions for his account with Wells Fargo, passing it off as the account information for Nirav Ingredients. (Compl., ¶ 30). Ash Ingredients blindly followed the fraudulent wiring instructions to transfer certain funds to Wells Fargo, and Wells Fargo properly deposited the funds into the account identified in Ash Ingredients' instructions. (Compl., ¶¶ 31-32). The complaint alleges that as a result of the wire transfers, Nirav Ingredients has incurred "actual damages", injuries to its "credit worthiness" and its president, Himanshu Doshi, (who is not a party to the suit), contracted acute heart failure that required bypass surgery. (Compl., ¶¶ 50-54, 71). Ash Ingredients does not assert any claims for damages against Wells Fargo. (*See generally* Compl.).

## **STANDARD OF REVIEW**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a cause of action for "failure to state a claim upon which relief can be granted" as a matter of law. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint; it "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). When considering a motion to dismiss under Rule 12(b)(6), a court must assume that the allegations are true and construe them in the light most favorable to the non-moving party. *Id.* The Court may dismiss a complaint on a Rule 12(b)(6) motion when "the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

**ARGUMENT**

**A.**     **North Carolina's adoption of Article 4A of the Uniform Commercial Code displaces Nirav Ingredients' common law claim of negligence.**

In Count I of the Complaint, Nirav Ingredients asserts a common law negligence claim against Wells Fargo. The core of Nirav Ingredients' negligence claim is that Wells Fargo mishandled an incoming wire transfer. The Uniform Commercial Code ("UCC"), as adopted by the North Carolina legislature, exclusively governs wire transfers, and thus any common law claim based on the same, is preempted and due to be dismissed. *See* N.C. GEN. STAT. §§ 25-4A-207(d) (mistake and restitution sole claims allowed for recovery of funds received via wire transfer), 25-4A-102, cmt. ¶3 and ¶4 (U.C.C. exclusive means of determining rights, duties, liabilities - inconsistent principles of law or equity not applicable); *see Donmar Enterprises, Inc. v. S. Nat. Bank of N. Carolina*, 64 F.3d 944, 949 (4th Cir. 1995) (holding that liability arising from wire transfers founded on state law of negligence is pre-empted).

Wire transfers are governed by Regulation J, which makes Article 4A of the Uniform Commercial Code the exclusive means of the determining the rights, duties, and liabilities of parties in a Fedwire funds transfer. *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 223 (4th Cir. 2002) ("Subpart B of Regulation J incorporates Article 4A of the Uniform Commercial Code to 'provide [ ] rules to govern funds transfers through Fedwire.' 12 C.F.R. § 210.25(a) (2002)…. The rules adopted from Article 4A serve as the exclusive means for determining the rights, duties and liabilities of all parties involved in a Fedwire funds transfer.") (internal citation omitted)).

Article 4A is a finely-tuned and precise division of risk and responsibility. *See* N.C. GEN. STAT. §§ 25-4A-101, *et seq.* The Court should not go beyond these provisions to provide a remedy. The official comments to the UCC provide:

> In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by

unique rules that address the particular issues raised by this method of payment. **A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles**. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.

Funds transfers involve competing interests--those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. **Consequently, resort[ing] to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article**.

OFFICIAL CODE COMMENT, 7 ANDERSON U.C.C. § 4A-102:1 (3d ed.) (emphasis added). Regulation J and Article 4A provide clear guidance that the UCC displaces any common law claims based on a wire transfer. Despite this, Nirav Ingredients attempts to assert a claim for negligence against Wells Fargo that does not fall under Regulation J and Article 4A, and consequently, must be dismissed.

**B.      Nirav Ingredients does not have standing to sue Wells Fargo under the UCC.**

Count II of the Complaint asserts a claim for violation of Article 4A of the UCC against Wells Fargo. As an initial matter, Nirav Ingredients does not have standing to bring this claim against Wells Fargo. Courts have routinely made clear that challenges to wire transfers may only be maintained by the originator of the wire transfer and only against their own bank. *See Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998).

Here, Nirav Ingredients is not the originator of the wire transfers at issue. Nirav Ingredients is merely an *alleged* intended beneficiary and, thus, in no way directly involved. The underlying

transfers involve three parties: (1) Ash Ingredients as the originator of the wires, (2) Wells Fargo as the receiving bank, and (3) the holder of the account identified in the wiring instructions (allegedly, Hacker) as the beneficiary. Simply put, Nirav Ingredients had no direct (or even indirect) involvement with the wire transfers at issue. It never possessed the funds or had a legal claim to the specific funds transferred. An interloper's use of its name in an email transmitting wire instructions is not sufficient to create possessory rights. Wells Fargo complied with Article 4A of the UCC when it credited the funds to the account Ash Ingredients designated by the account number. There is no privity or any other relationship between Nirav Ingredients and the wire transfers which would give rise to standing to pursue a claim against Wells Fargo. Accordingly, Nirav Ingredients lacks the proper standing to maintain an action against Wells Fargo and thus its claim for violation of Article 4A against Wells Fargo should be dismissed

## C. <u>Based on Nirav Ingredients' allegations, Wells Fargo complied with all requirements of Article 4A.</u>

Wells Fargo had no obligation to check the name of the account receiving the incoming electronic funds transfer. When banks receive wire transfers, they may rely on the identified account number alone. N.C. GEN. STAT. § 25-4A-207. Plaintiff contends that Wells Fargo should have known that the account was not the intended recipient of its funds based on the beneficiary name notation or that Wells Fargo should have known the account was being used to defraud Nirav Ingredients. This theory is inconsistent with the whole purpose of automated wire transfers and is untethered to any existing legal duty.

Standard wire transfer practice is for the bank to authorize payment automatically based on the account number alone. The Official Code Comments for N.C. GEN. STAT. § 25-4A-207 are instructive on the wire transfer system and its importance to modern-day banking. The Comment provides:

> A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account. The processing of the order [is done…] without human reading of the payment order itself. … If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but **if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost**….

N.C. GEN. STAT. § 25-4A-207 (official comment 2) (emphasis added). Presumably this is because of the acknowledgment that manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced.

Courts applying UCC § 4A-207 consistently have found that banks in Wells Fargo's position complied with the UCC when accepting a wire based only on an account number (regardless of any inconsistency with the beneficiary name). *See e.g. Sliders Trading Co. L.L.C. v. Wells Fargo Bank, N.A.*, No. 17-CV-04930-LB, 2017 WL 6539843, at \*6 (N.D. Cal. Dec. 21, 2017); *TME Enterps., Inc.*, 22 Cal. Rptr. 3d at 146. For example, in *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, the court determined that Wells Fargo was not liable for negligence where it had complied with its duties under the UCC when it relied on an account number to authorize an incoming wire. 352 F. Supp. 3d at 1230-31. The court concluded: "[the UCC's] statutory framework permits, and indeed encourages, banks to process electronic funds transfers via automated systems. Moreover, it expressly excuses banks from any duty to verify whether the recipient's name and the name on the receiving account match." *Peter E. Shapiro, P.A.*, 352 F. Supp. 3d at 1231; *see also First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147 (10th Cir. 2000) (holding that under Section 4A-207, the bank has no duty to determine if there is a conflict and it may rely on the number as proper identification).

The law in every jurisdiction that has confronted this issue is the same: unless Wells Fargo became consciously aware that the beneficiary name and account number did not match, Wells Fargo is not liable. Whether Wells Fargo *should* have known is irrelevant. Wells Fargo had no obligation to check its records to ascertain whether the name matches the account number. It is authorized to do just as it did: deposit the funds into the account number identified on the wiring instructions.

Nirav Ingredients has failed to allege that Wells Fargo breached any actionable duty, and its claim for violation of Article 4A of the UCC is due to be dismissed.

**D.** **Nirav Ingredients cannot state a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act.**

Finally, Count III of the Complaint alleges Wells Fargo violated North Carolina's Unfair and Deceptive Trade Practices Act. Nirav Ingredients' claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act fails because there is no viable claim or misconduct upon which the violation can be premised. While it is difficult to discern from the Complaint's convoluted allegations, Nirav Ingredients' unfair and deceptive trade practices claim appears to be predicated on the same conduct forming the basis of its other two claims against Wells Fargo. As discussed, *supra*, both of these claims are due to be dismissed as a matter of law, thereby also necessitating the dismissal of Nirav Ingredients' unfair and deceptive trade practices claim. Courts have routinely held that where a plaintiff cannot establish a claim for the torts underlying its claim for unfair and deceptive trade practices, the unfair and deceptive trade practices claim should be dismissed. *See, e.g., Fickling v. Burger King Corp.*, No. 87–1725, 1988 WL 30675, at *1 (4th Cir. Apr. 4, 1988) (per curiam) (unpublished) (dismissing unfair and deceptive trade practices claim where the underlying tort which is alleged to constitute the unfair or deceptive act cannot be

established as a matter of law); *Smith v. Cent. Soya of Athens, Inc.*, 604 F.Supp. 518, 529 (E.D.N.C. 1985) (same).

For example, in *Capparrelli v. Amerifirst Home Improvement Finance Co.*, the District Court for the Eastern District of North Carolina found that the plaintiff failed to establish the usury claims which formed the basis for its Chapter 75 claim, and held as follows:

> Having concluded that plaintiffs fail to state a claim upon which relief can be granted under either section 24-8 or North Carolina usury law, the court also concludes that plaintiffs fail to state a claim under Rule 12(b)(6) for a violation of section 75-1.1. *See, e.g., Fickling v. Burger King Corp.*, No. 87-1725, 1988 WL 30675, at *1 (4th Cir. Apr. 4, 1988) (per curiam) (unpublished) (dismissing unfair and deceptive trade practices claim where the underlying tort which is alleged to constitute the unfair or deceptive act cannot be established as a matter of law); *Smith v. Cent. Soya of Athens, Inc.*, 604 F.Supp. 518, 529 (E.D.N.C. 1985) (same).

535 F. Supp. 554, 564 (citations in original).

Because Nirav Ingredients' claims of negligence and violation of Article 4A of the UCC fail as a matter of law, so too must its claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act.

## REQUEST FOR PRELIMINARY HEARING

Wells Fargo requests a preliminary hearing pursuant to Rule 12(d) and the Initial Scheduling Order for good cause shown. Some, if not all, of Nirav Ingredients' claims against Wells Fargo are displaced and preempted or cannot be asserted by Nirav Ingredients for lack of standing. Further, resolution of this Motion may be dispositive to this matter. Accordingly, Wells Fargo asks that the Court grant its request for preliminary hearing on its Motion to Dismiss.

## CONCLUSION

Plaintiffs fail to state a claim against Wells Fargo Bank, N.A. upon which relief can be granted. Accordingly, Wells Fargo respectfully requests that, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the Court dismiss all claims asserted against Wells Fargo in Plaintiffs' Complaint (Counts I – III), with prejudice.

Respectfully submitted on the 31st day of August, 2020.

*s/ Mignon A. Lunsford*
Mignon A. Lunsford
N.C. Bar No. 46220
Burr & Forman LLP
421 Fayetteville Street
Suite 1100, Office 1140
Raleigh, NC 27601
Tel: (919) 334-4710
Tel Direct: (919) 334-4709
mlunsford@burr.com
Attorney for WELLS FARGO BANK, N.A.

I hereby certify, subject to Rule 11 of the Federal Rules of Civil Procedure, that the foregoing submission complies with the word limitation set forth in Paragraph 3(b)(iv) of the Honorable Frank D. Whitney's Initial Scheduling Order.

*s/ Mignon A. Lunsford*
OF COUNSEL

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 31st day of August, 2020

Joseph H. Powell
Corey V. Parton
Parton & Associates, PLLC
11 N. McDowell Street
Charlotte, NC 28202
Powell@PartonNC.com
Parton@PartonNC.com

David G. Redding
Ty K. McTier
Redding & Jones, PLLC
2907 Providence Road, Suite A303
Charlotte, NC  28211
dredding@reddingjones.com
tmctier@reddingjones.com

*s/ Mignon A. Lunsford*
OF COUNSEL