UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00366-FDW-DSC

| | |
|---|---|
| NIRAV INGREDIENTS, INC. and ASH INGREDIENTS, INC., ) ) ) Plaintiffs, ) ) vs. ) ) WELLS FARGO BANK, N.A. and JOHN DOE(S), ) ) ) ) Defendants. ) ) | ORDER |

THIS MATTER is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Amended Motion to Dismiss, (Doc. No. 7) Plaintiff's Complaint (Doc. No. 1-1) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has reviewed Defendant's Motion and Brief in Support (Doc. Nos. 7, 8), Plaintiff's Response in Opposition (Doc. No. 10), and Defendant's Reply (Doc. No. 12). Accordingly, for the reasons detailed below, Defendant's Amended Motion to Dismiss the Complaint (Doc. No. 1-1) is GRANTED in part and DENIED in part.

**I. BACKGROUND**

Nirav Ingredients, Inc. ("Nirav") and Ash Ingredients, Inc. ("Ash") (collectively, "Plaintiffs") filed the above-captioned matter in the Superior Court of North Carolina in Mecklenburg County on June 6, 2020, against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") for claims for negligence, breach of the UCC, and violation of the North Carolina Unfair

and Deceptive Trade Practices Act.[1] (Doc. No. 1-1). Wells Fargo filed a Notice of Removal and Notice of Appearance on July 9, 2020. (Doc. No. 1, 3).

Plaintiffs' claims arise out of the creation of a fraudulent bank account ("Fake Account") by Hacker with Wells Fargo that resulted in two fraudulent wire transfers totaling $95,744 (ninety-five thousand seven hundred and forty-four). According to the Complaint, the transfers were originated by Ash and transferred into Hacker's account but were intended to benefit Nirav.

Plaintiffs allege Nirav has maintained an account with Wells Fargo for over 25 years (Doc. No. 1-1, ¶ 8). From January 1, 1995, to January 31, 2020, Nirav has completed a total of $148,000,000 (one hundred forty-eight million dollars) worth of transactions exclusively through its account with Wells Fargo. (Id. ¶¶ 15-16).

According to the Complaint. in May of 2019, Ash was set to make payment to Nirav to satisfy outstanding invoices owed to Nirav. (Id. ¶ 20). Ash received wire instructions via an email from Hacker which appeared to be from Nirav, but the email name contained an extra "v" ("Hacked Email"). (Id. ¶¶ 28-29). The wire transfer instructions listed Nirav's business name and business address as the beneficiary information but also included an account number that was not Nirav's account number. (Id. ¶ 30). Nirav alleges Wells Fargo allowed Hacker to open the Fake Account without verifying the identity of the account's beneficiary. (Id. ¶¶ 23-25). Ash implemented two wire transfer orders pursuant to the emailed instructions, to which Wells Fargo completed. (Id. ¶ 31).

Nirav alleges Wells Fargo transferred Nirav's money without hesitation and despite the knowledge that Hacker's account was not owned by Nirav. (Id. ¶ 35). Nirav alleges Wells Fargo

---

[1] Plaintiffs have made additional allegations against John Doe(s) ("Hacker") who has neither been identified nor appeared in this matter.

knew the account was not owned by Nirav due to previous transacted millions of dollars to Nirav's true account. By the time Nirav discovered the funds had been deposited in Hacker's account, the funds had been removed. (Id. ¶ 34). Nirav alleges that despite the central role that Wells Fargo played in Nirav being defrauded, Wells Fargo has refused to assist Nirav in its efforts to recover the money stolen from it, including refusing to disclose the identity of Hacker. (Id. ¶¶ 24, 40). According to the Complaint, Wells Fargo informed Nirav that it has no obligation to check whether an account name and an account number match during a wire transfer. (Id. ¶ 37). Nirav alleges that Wells Fargo knows of the rampant growth of online banking fraud and did not afford their clients the same protective measures that they expect their clients to undertake in making accurate wire transfers. (Id. ¶¶ 41-49).

Nirav alleges that as a result of the wire transfers, Nirav has incurred "actual damages", injuries to its "credit worthiness" and its president, Himanshu Doshi, contracted acute heart failure that required bypass surgery due to the stress caused by the events discussed *supra*. (Id. ¶¶ 50-54, 71). Ash does not assert any claims for damages against Wells Fargo. (See generally Id.).

Wells Fargo filed a Motion to Dismiss for Failure to State a Claim on July 10, 2020, but did not attach a brief or memorandum of law. (Doc. No. 4). Wells Fargo then filed an Answer, Amended Motion to Dismiss, a Memorandum in Support of Amended Motion to Dismiss on August 31, 2020. (Doc. No. 6-8). Plaintiffs subsequently responded, (Doc. No. 10), and Wells Fargo replied, (Doc. No. 12), and now this motion is ripe for review.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore

3

Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Supreme Court has also held that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56) (internal citations omitted). Conclusory allegations, however, are "not entitled to be assumed true." Iqbal, 556 U.S. at 681. While a high level of factual detail is not required, a complaint needs more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Twombly, 550 U.S. at 555).

### III. ANALYSIS

Plaintiffs allege three causes of action against Wells Fargo: 1) negligence, 2) violation of Article 4A of the Uniform Commercial Code, and 3) violation of North Carolina's Unfair and Deceptive Trade Practices Act. Plaintiff also allege separate causes of action against Hacker consisting of conversion, fraud, and computer trespass; since Hacker has neither been identified nor appeared, the Court will not address these claims. The court will address each cause of action against Wells Fargo below.

**A. Count I: Nirav's state law negligence claim.**

Wells Fargo argues that Nirav's negligence claims should be dismissed pursuant to Rule 12(b)(6) because UCC Article 4A preempts state law negligence claims rooted in wire fund

4

transfers. Nirav retorts that all ten of their allegations (Doc. No. 10, p. 4-5 (citing Doc. No. 1-1 ¶ 23, 25, 27, 35, 38, 60(b), 60(c)(iii), 60(e)(iii)-(iv)) survive preemption by Article 4A because they are actions taken by Wells Fargo *before* and *after* the wire transfer. (Id. at p. 5). For the reasons that follow, the Court determines the allegations of Wells Fargo's conduct prior to the wire transfer may proceed, but all other allegations are preempted by Article 4A.

To establish a claim for negligence in North Carolina, the plaintiff must show that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach. Martishius v. Caroico Studios, Inc., 562 S.E.2d 887 (N.C. 2002). However, "state law can be preempted by federal law when 'Congress evidences an intent to occupy a given field . . . ,'" or 'it is impossible to comply with both state and federal law . . . ,' or 'state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" Donmar Enterprises, Inc. v. S. Nat. Bank of N. Carolina, 828 F. Supp. 1230, 1234 (W.D.N.C. 1993) (internal citations omitted), aff'd, 64 F.3d 944 (4th Cir. 1995).

Federal Reserve Board Regulation J was created to "make and promulgate . . . regulations governing the transfer of funds and charges . . . among Federal reserve banks . . . " within the specific context of Fedwire funds transfers. Donmar, 828 F. Supp. at 1235; see 12 C.F.R. § 210.25(a) (2002). Subpart B of Regulation J was developed to "provide[ ] rules to govern funds transfers through . . . Fedwire." 12 C.F.R. § 210.25(b)(3). To achieve this, Subpart B incorporated Article 4A of the Uniform Commercial Code, which provides "[an] exclusive means of determining the rights, duties and liabilities of the affected parties in [fund transfers] . . . resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article. See N.C. Gen. Stat. Ann. § 25-4A-102, cmt.

5

¶4. Because of the clear intent for Regulation J to occupy the field of Fedwire fund transfers, the Fourth Circuit explained:

> [T]he Board has made clear that the type of state laws it considers not in conflict with Subpart B are state laws specifically governing funds transfers and parties not subject to Subpart B . . . any liability founded on state law of negligence or wrongful payment would necessarily be in conflict with the federal regulations and is pre-empted.

Donmar, 64 F.3d at 949. Therefore, after North Carolina's adoption of Article 4A, all negligence claims arising out of wire transfers are preempted and must be dismissed. Id.

However, an exception to this rule has emerged in the Fourth Circuit via the Court's decision in Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 224 (4th Cir. 2002). In Eisenberg, the court determined that state law negligence claims rooted in "the duties, obligations and liabilities applicable to bank functions having nothing to do with a Fedwire transfer" can evade preemption by Article 4A because Subpart B of Regulation J does not address these claims. 301 F.3d at 224. More specifically, the court recognized claims regarding the opening and management of fake accounts will not be preempted. Id.

Nirav accurately relies on the Fourth Circuit's decision in Eisenberg to save the portion of allegations stemming from conduct before the wire transfer (Doc. No. 10, p. 5-6) but attempts to stretch the decision to include negligence allegations arising out of outcomes of a wire transfer. Nirav has failed to supply any authority to the Court to demonstrate that negligence claims rooted in the aftereffects of a wire transfer are not preempted by Article 4A. The Court concludes that adopting Nirav's reasoning would likely infringe on and aggravate Subpart B's purpose. 12 C.F.R. § 210.25(a) (" . . . to govern fund transfers through the Fedwire . . .").

Wells Fargo has chosen to wholly ignore the exception created by the Fourth Circuit's decision in Eisenberg and argues that Nirav would have no knowledge of the fraudulent account

6

nor have any allegations against Wells Fargo if the wire transfer had never even occurred. Thus, Wells Fargo contends all of Nirav's claims arise from the wire transfer and are preempted by Article 4A of the UCC. (Id.). Wells Fargo's argument, however, fails to acknowledge the binding precedent from the Fourth Circuit in Eisenberg.

Therefore, the Court will allow Nirav's state law negligence claim to proceed to the limited extent Plaintiffs rely on conduct relating to the opening and maintaining of a fraudulent account. (Doc. No. 1-1 ¶ 23, 25, 27, 60(b), 60(c)(iii)). All other allegations in Nirav's state law negligence claim, including those allegations concerning wire fund transfers and the resulting conduct (Doc. No. 1-1 ¶ 35, 38, 60(e)(iii)-(iv)), are preempted by Article 4A of the UCC and are dismissed.

**B. Count II: Nirav's claim alleging violation of Article 4A of the UCC.**

Wells Fargo argues that Nirav's claim alleging a violation of Article 4A of the UCC should be dismissed pursuant to Rule 12(b)(6) because Nirav lacks the necessary statutory standing to sue Wells Fargo under the UCC. (Doc. No. 8, p. 4). Nirav contends it holds statutory standing as an "intended beneficiary" because Ash intended for the wire transfer funds to go to Nirav as the beneficiary. Ash, the originator of the wire transfers, asserts no claims against Wells Fargo. Nirav made additional arguments, dependent on the Court finding it has statutory standing, alleging the specific provisions of Article 4A violated by Wells Fargo. For the reasons that follow, the Court determines Nirav does not have statutory standing to sue Wells Fargo under the UCC, and all other allegations made under Article 4A against Wells Fargo are rendered moot.

Banks who use automated processing of wire transfer orders may properly rely on the account number without regard to the name provided if the bank does not know the name and number refer to different people. N.C. Gen. Stat. § 25-4A-207 cmt. 2, ¶ 1. When a beneficiary's bank rightfully pays a designated beneficiary identified by number and that person was not entitled

7

to receive payment from the originator, the amount paid may be recovered from that person by the originator. § 25-4A-207(d)(1). If the beneficiary's bank knows the name and number identify different people, no person has rights as the beneficiary and acceptance of the order cannot occur. § 25-4A-207(b)(2). Beneficiary is defined as "the person to be paid by the beneficiary's bank". § 25-4A-103(a)(2). Originator is defined as "the sender of the first payment order in a funds transfer". §25-4A-104(c).

Nirav argues Wells Fargo knew of the discrepancy between the beneficiary name and the beneficiary account number due to the longstanding history of transactions to Nirav's True Account. (Doc. No. 1 ¶ 30, 32, 67). Because they knew the discrepancy, Nirav contends the applicable provision here is §24-4A-207(b)(2); Nirav suggests no one is coined a 'beneficiary' and funds should be returned to Nirav as they were intended to benefit them in the first place (Doc. No. 10, p. 7). Thus, Nirav argues it would have statutory standing to bring a claim alleging violation of Article 4A against Wells Fargo.

However, Wells Fargo accurately points out Nirav's fatal flaw in their failure to provide any authority to the Court that would suggest "intended beneficiaries" may step in and assert a legal right to the funds in question.(Doc. No. 12, p. 3). Wells Fargo, again, accurately points out that Ash, the originator of the wire transfers, has not asserted any claim in Plaintiffs' Complaint (Doc. No. 1-1) for return of the funds. (Doc. No. 12, p. 2 n.1).

Here, the Court finds Nirav seeks extension of existing law in making arguments about the applicable provisions governing its claim. Nirav failed to provide authority that they have statutory standing as an intended beneficiary to make any claims under the UCC. Without statutory standing, Nirav has failed to state a claim against Wells Fargo for violation of Article 4A of the UCC, and it is dismissed.

8

### C. Count III: Nirav's claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act.

Wells Fargo argues Nirav's claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") must fail because Nirav lacks the required basis in tort or statutory standing. (Doc. No. 12, p. 4). For the reasons that follow, the Court determines that Nirav lacks the necessary basis in tort or statutory standing to bring a claim alleging violation of the UDTPA.

In North Carolina, "unfair or deceptive acts in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). The UDTPA is meant to provide a private cause of action to plaintiffs damaged by unfair or deceptive acts or practices that affect commerce. In Fickling v. Burger King Corp., the Fourth Circuit dismissed an unfair and deceptive trade practices claim where the underlying tort, which was alleged to constitute the unfair or deceptive act, could not be established as a matter of law. Fickling v. Burger King Corp., 843 F.2d 1386, 1988 WL 30675, at *1 (4th Cir. Apr. 4, 1988) (per curiam) (unpublished).

Wells Fargo relies heavily on Fickling's decision to support its assertion that Nirav's UDTPA claim must dismissed due to the failure of their state law negligence claim and their lack of standing under the UCC. (Doc. No. 8, p. 7). This Court has dismissed Nirav's claim of violation of the UCC due to lack of statutory standing; however, as discussed *infra*, this Court has only dismissed Nirav's state law negligence claim in part.

Nirav's Complaint originally based its UDTPA claim on its prior negligence allegations involving the creation and management of fraudulent accounts, as well as wire transfer procedures and post-transfer conduct (Doc. No. 1-1, ¶ 72-77); yet the pleadings before the Court appear to narrow those claims to *specific* tortious conduct related *only* to the wire transfer procedures and post-transfer conduct (Doc. No. 10, p. 9-10). The Court has already determined these specific

9

allegations are preempted by Article 4A and are dismissed. Due to the specificity of Nirav's allegations and their subsequent preemption, Nirav does not have a basis in tort to bring a UDTPA claim against Wells Fargo.

Nirav has failed to state a claim against Wells Fargo for violation of North Carolina's Unfair and Deceptive Trade Practices Act; therefore, it is dismissed.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Wells Fargo's Amended Motion to Dismiss (Doc. No. 7) is GRANTED in part and DENIED in part. For the reasons stated above, Plaintiffs' claim for negligence is DISMISSED IN PART. Plaintiffs' claims for violation of Article 4A of the UCC and violation of North Carolina's Unfair and Deceptive Trade Practices Act are DISMISSED.

IT IS SO ORDERED.

Signed: January 27, 2021

Frank D. Whitney
United States District Judge