**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:20-cv-00366-FDW**

| | | |
|---|---|---|
| **NIRAV INGREDIENTS, INC. and ASH INGREDIENTS, INC.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **BRIEF IN SUPPORT OF** |
| **v.** | ) ) | **WELLS FARGO'S BANK, N.A.'S MOTION FOR SUMMARY** |
| **WELLS FARGO BANK, N.A. and JOHN DOE(S),** | ) ) ) | **JUDGMENT** |
| **Defendants.** | ) ) | |

Defendant Wells Fargo Bank, National Association ("<u>Wells Fargo</u>"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby files its Motion for Summary Judgment in the above-referenced case on the ground that there are no genuine issues of material fact, and Wells Fargo is entitled to judgment in its favor as a matter of law. In support of its Motion, Wells Fargo states as follows:

## INTRODUCTION

Plaintiffs Nirav Ingredients, Inc. ("<u>Nirav</u>") and Ash Ingredients, Inc. ("<u>Ash</u>", together with Nirav Ingredients, "<u>Plaintiffs</u>") are asking the Court to hold Wells Fargo liable for failing to protect Plaintiffs from being defrauded by a wire scheme perpetrated by an unidentified and unknown hacker (the "<u>Hacker</u>"). The Court has previously dismissed all of Nirav's claims related to the wires themselves, leaving a single count of negligence relating to Wells Fargo's "opening and maintaining of a fraudulent account." Nirav can point to no evidence to sustain this limited negligence claim, a claim that should never reach the evidence as barred by both the applicable statute of limitations and the economic loss doctrine.

45195530 v3

Legal bars aside, the account on which Nirav's negligence claim is premised (the "Account") did not belong to Nirav, and it did not belong to the Hacker. Instead, it belonged to an innocent third party who had absolutely no involvement in or knowledge of the Hacker's fraudulent wire scheme. There is absolutely no evidence that the Account was "fraudulent" or mismanaged in any way, and because Nirav was a stranger to the Account, Wells Fargo owed no duties to Nirav with regard to the Account. There is no actionable negligence.

Even if Nirav could prove that Wells Fargo failed to exercise ordinary care in its opening and maintaining of the Account (it did not), the subsequent conduct of both the Hacker and Plaintiffs prevent Wells Fargo from being the proximate cause of any alleged damages sustained by Nirav. Certainly, the proper opening of a savings account for an innocent third party in 2014 cannot be said to be the proximate cause of any losses incurred in 2019 pursuant to Hacker's fraudulent wire scheme enabled by Plaintiffs' failure to secure their emails and bank account information. Simply put, there are arguably several liable parties here, but Wells Fargo is not one of them.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). The mere existence of an alleged factual dispute between the parties does not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

## STATEMENT OF UNDISPUTED FACTS

1.　Nirav Ingredients, Inc. is in the business of distributing chemicals and ingredients. [Doc. 1-1, ¶ 9]. Nirav maintains its business bank account with Wells Fargo. [Doc. 1-1, ¶ 13; *see also* Deposition of Himanshu Doshi,[1] attached hereto as Exhibit A, p. 19:2-13]. Nirav admits that Wells Fargo has properly maintained its business bank account. [*Id.* at pp. 21:23 – 22:3; 24:11-21].

2.　Ash Ingredients, Inc. is one of Nirav's customers. [Doc. 1-1, ¶ 19; Ex. A, p. 25:24; *see also* Deposition of Anil Kripalani attached hereto as Exhibit B, pp. 7:15].

3.　On May 16, 2019, Ash's Legna-Garcia-Rodriguez received an email that she believed was from Nirav Doshi, secretary of Nirav, with what purported to be new account information for Nirav (the "Email"). [Doc. 1-1, ¶ 30; *see also* May 16, 2019 Email, attached hereto as Exhibit C; Ex. B, p. 58:22-59:3].

4.　The Email was actually sent by a third-party hacker (the "Hacker") pursuant to a fraudulent email scheme. [Doc. 1-1, ¶ 29; Ex. C; Ex. A, p. 36:19-36:25 (explaining that "[i]t seems [Nirav's] system was hacked."); *see also* Ex. B, pp. 21:14 (highlighting that Ash did nothing "to confirm the accuracy of the wire instructions)]. Wells Fargo had nothing to do with the Hacker's Email. [Ex. A, p. 72:9-72:14].

---

[1] Himanshu Doshi is President of Nirav Ingredients, Inc. [Ex. A, p. 109:24].

5. In 2019, Nirav had no procedure or policies in place concerning wire fraud or "spoof" emails. [Ex. A, p. 65:3-65:8].

6. In the Email, the Hacker directed Ash to wire funds for two outstanding invoices from Nirav to the account provided in the Email. [Doc. 1-1, ¶ 29; Ex. A, p. 38:4-38:18; Ex. B, pp. 31:10-35:12].

7. Nobody at Ash called Nirav to verify the accuracy of the wiring instructions. [Ex. A, p. 74:11-74:14; *see also* Ex. A, p. 77:14-77:19 (Doshi testifying that there was nothing preventing Ash from calling Nirav to verify the accuracy of the wiring instructions email); Ex. B, pp. 21:14].

8. The account provided in the Email was for a Wells Fargo Way2Save Savings Account ending in 6081 (the "Account"). [Doc. 1-1, ¶ 30; *see also* Declaration of SaVita Davis, attached hereto as Exhibit D, ¶ 4]. The Account belonged to Karen Paige ("Ms. Paige") and was opened on September 30, 2014. [*Id.*; *see also* Account Application for the Account, attached hereto as Exhibit E].

9. The account was opened in person as a Wells Fargo branch. [*See* Ex. E; *see also* 30(b)(6) Deposition of Wells Fargo by SaVita Davis, attached hereto as Exhibit F, p. 17:5-9]. Wells Fargo opens consumer savings accounts, like the Account here, utilizing an electronic process that verifies the customer's identity through his or her social security number and two forms of identification, one of which must be government issued. [Ex. D, ¶ 5].

10. In addition to verifying the customer's identity, Wells Fargo also uses the Early Warning System, a third party platform that searches for any negative banking history associated with the customer's name and/or social security number for the last three years. [Ex. D, ¶ 6; Ex. F, pp. 88:3 – 89:3]. Negative banking history can include fraudulent account activity, recurring

overdraft activity, or account mishandling. [Ex. D, ¶ 6]. If the Early Warning System detects any negative banking history, Wells Fargo will not open an account for the customer. [Ex. D, ¶ 6; Ex. F, p. 88:22-24].

11.     At the time the Account was opened in 2014, Wells Fargo properly verified Ms. Paige's identity by verifying her Social Security Number and reviewing two forms of identification, specifically, Ms. Paige's driver's license and a credit card issued in her name. [Ex. D, ¶ 7; Ex. E; Ex. A, p. 51:6-52:2 (Doshi's testimony that he is not "personally aware" of any evidence of testimony that Wells Fargo failed to verify the Hacker's identity), 98:22 (same)].

12.     Wells Fargo also ran a search for Ms. Paige with the Early Warning System, and no negative banking history was detected. [Ex. D, ¶ 8].

13.     Accordingly, Wells Fargo verified Ms. Paige's identity at the time the Account was opened and determined that her banking history, as reported by the Early Warning System, did not pose a threat for mishandling of the Account. [Ex. D, ¶ 9; Ex. E; Ex. A, p. 51:6-52:2, 98:22].

14.     At all times prior to May 2019, the Account was in good standing with no history of red flags or suspicious activity, including no fraudulent wire activity, no overdrafts, no fraudulent checks, and no claims filed. [Ex. D, ¶ 10; Ex. A, p. 24:11-24:21, 29:9-29:11]. At all times, the Account was maintained in accordance with applicable policies, regulations, and laws. [Ex. D, ¶ 10].

15.     On May 21, 2019, in response to the Email, and without verifying its authenticity, Ash wired $83,925.00 to the Account. [Doc. 1-1, ¶ 33; *see also* May 21, 2019 Wire Instructions, attached hereto as Exhibit G].

16. On May 24, 2019, in response to the Email, and without verifying its authenticity, Ash wired $11,819.00 to the Account (both wires collectively, the "Wires"). [Doc. 1-1, ¶ 33; *see also* May 24, 2019 Wire Instructions, attached hereto as Exhibit H].

17. The wire instructions for both Wires identified the Account by account number. [Doc. 1-1, ¶¶ 30-31; Exs. G, H]. According to Mr. Doshi: "The wire was not missent. The wire had misinformation, you can say, because of the hacker's e-mail." [Ex. A, p. 93:21-93:23; *see also* Ex. B, pp. 9:3 (testifying that Wells Fargo played no role in initiating the wire transfer).]

18. On June 3, 2019, Nirav reported the Wires to Wells Fargo, stating that the Wires were sent to the Account pursuant to a fraudulent email scheme perpetrated by the Hacker. [Doc. 1-1, ¶ 36; June 3, 2019 Email from Nirav Doshi to Wells Fargo, attached hereto as Exhibit I; Ex. A, p. 62:10-62:12; [Ex. D, ¶ 11]. At the time of the notice to Wells Fargo, the wired funds had already left the Account. [Doc. 1-1, ¶ 34].

19. Wells Fargo opened two claims nos. 190603007258 and 1900603007315 (the "Claims"), one for each Wire, in response to Nirav's report. [Ex. D, ¶ 11].

20. Nirav has not attempted to collect on the outstanding invoices from Ash. (Ex. A, p. 34:12-34:22; 35:1-35:8; Ex. B, pp. 47:4].

21. On June 4, 2019, as a result of the Claims, Wells Fargo placed a Hard Hold on the Account. [Ex. D, ¶ 12; *see also* Checking/Savings Account Detail for the Account, attached hereto as Exhibit J]. The Hard Hold was placed on the Account in accordance with Wells Fargo policy and procedure so the Account would be inaccessible while Wells Fargo investigated the Claims. [Ex. D, ¶ 12].

22. On June 18, 2019, as a result of the Claims, Wells Fargo closed the Account for improper account handling. [Ex. D, ¶ 13; Ex. I]. Specifically, because the Claims stated that the

Wires were intended for a different account, and Ms. Paige did not report the wired funds to Wells Fargo, Wells Fargo determined that Ms. Paige did not properly handle her Account, and closed it. [Ex. D, ¶ 14].

23.     Wells Fargo takes improper account handling very seriously, so in addition to closing the Account on June 18, 2019, Wells Fargo closed its entire customer relationship with Ms. Paige in accordance with Wells Fargo policy and procedure. [Ex. D, ¶ 14].

24.     On June 5, 2020, Plaintiffs filed suit in the Superior Court of Mecklenburg County, asserting claims against Wells Fargo for negligence, violation of the Article 4A of the Uniform Commercial Code, and unfair and deceptive trade practices related to the Wires.[2] [*See generally,* Doc. 1-1].

25.     On July 9, 2020, Wells Fargo removed the case from the Superior Court to this Court. [Doc. 1].

26.     On August 31, 2020, Wells Fargo filed a motion to dismiss the claims against it for failure to state a claim upon which relief could be granted. [Docs. 7-8].

27.     On January 28, 2021, the Court granted in part Wells Fargo's motion to dismiss. [Doc. 18]. Specifically, the Court dismissed all of Nirav's claims against Wells Fargo save for a limited portion of Nirav's state law negligence claim relating to Wells Fargo's "opening and maintaining of a fraudulent account." [Doc. 18; Doc. 1-1, ¶¶ 23, 25, 27, 60(b), 60(c)(iii)].

---

[2] While both Ash and Nirav are named plaintiffs in the suit, this Court recognized in its January 28, 2021 Order that Ash did not assert any claims against Wells Fargo in the Complaint. [Doc. 18, p. 3 "Ash does not assert any claims for damages against Wells Fargo."]. Ash's corporate representative confirmed this finding in his deposition. [Ex. B, pp. 37:13-15, 38:13 - 40:6, 46:4 – 47:4 (admitting Ash did not bring any claims against Wells Fargo in the suit)]. As a result, Nirav has the burden of proof, and all legal and factual conclusions should be made with regard to Nirav only.

## ARGUMENT

Per the Court's January 28, 2021 Order [Doc. 18], the only claim that remains outstanding is a single, limited negligence claim against Wells Fargo arising from the (alleged) "duties, obligations and liabilities applicable to bank functions having nothing to do with a Fedwire transfer." [Doc. 18, p. 6 (quoting *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224 (4th Cir. 2002)]. Accordingly, Nirav's negligence claim is this: Wells Fargo should not have allowed the Hacker[3] to open the Account because Wells Fargo should have known of frequent internet fraud generally, and it should have somehow stopped Plaintiffs from being duped. [Doc. 1-1, ¶¶ 23, 25, 27].

Nirav's negligence claim fails for at least five reasons. *First*, Nirav's negligence claim is barred in whole or in part by the applicable statute of limitations. *Second*, the economic loss doctrine bars Nirav's negligence claim. *Third*, Wells Fargo did not owe Nirav a duty of care with regard to the Account. *Fourth*, Nirav cannot prove that Wells Fargo failed to exercise ordinary care by opening a "fake account". And, *fifth*, Wells Fargo did not proximately cause Nirav any damages.[4]

---

[3] As discussed, *infra*, there is absolutely no evidence that the Hacker opened the Account. This central tenant of Nirav's claim is unequivocally false.

[4] Nirav includes a few general allegations of failure to "train, educate, and supervise Defendant Wells personnel in security policies, practices, and procedures." [Doc. 1-1, ¶ 60(c)(iii)]. There is not a separate claim for negligent supervision and training, nor did Nirav conduct any discovery to establish such a claim. While the Court will likely not recognize Nirav's general assertions as a separate claim, out of an abundance of caution, Wells Fargo notes that Nirav has not identified which employee was allegedly negligent or what negligent conduct he or she committed. Further, there are no allegations (or proof) that Wells Fargo was aware of its employees' alleged negligence. *Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 337 (4th Cir. 2009) ("In order to prove the third element, notice, 'the plaintiff must prove ... that prior to the [employee's tortious] act, the employer knew or had reason to know of the employee's incompetency.'").

### A.     <u>Nirav's negligence claim is time-barred.</u>

As an initial matter, Nirav's negligence claim is time-barred and due to be dismissed. Under North Carolina law, the statute of limitations for negligence is three years from the date the claim accrues. *See* N.C. Gen. Stat. § 1-52(5). "A negligence claim accrues when the wrong giving rise to the claim is complete, despite the fact that the plaintiff may not discover the actual injury until later." *Mountain Land Properties, Inc. v. Lovell*, 46 F. Supp. 3d 609, 625 (W.D.N.C. 2014).

Here, Nirav's negligence claim is based, at least in part, on Wells Fargo allowing "Hacker to open a Wells Fargo Bank Account number ending in #XXXXXX6081." [Doc 1-1, ¶ 23]. Thus, the claim accrued at the time the Account was opened, on September 30, 2014, *six* years prior to the filing of the Complaint and *three* years after the statute of limitations expired. [*See* Ex. D, ¶ 4; Ex. E].

As a result, Nirav's negligence claim based on the opening of the Account is time-barred and should be dismissed as a matter of law.

### B.     <u>Nirav's negligence claim is barred by the economic loss doctrine.</u>

Nirav's negligence claim is also barred because Nirav suffered only economic losses as a result of Wells Fargo's purported conduct. [Ex. A, pp. 118:7- 119:2]. "North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk." *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009).

In this case, it is inarguable that Nirav's relationship with Wells Fargo is contractual in nature, arising from the Account Agreement governing its business account. As a result, any duties owed by Wells Fargo to Nirav arise from the parties' Account Agreement.[5] And although Nirav

---

[5] The argument here is somewhat oblique since Nirav is asserting a negligence claim based on another customer's account, and thus governed by an Account Agreement between Wells Fargo and that customer (not Nirav).

attempts to confuse the issue by including allegations of physical injuries suffered by Nirav's president, Himanshu Doshi, as a result of Wells Fargo's conduct, Mr. Doshi is not a party to the suit, and any health conditions he allegedly sustained as a result of Wells Fargo's conduct cannot be imputed to a business entity of which he doesn't even have ownership. [Ex. A, 12:20-21; 118:20 – 119:2].

Because the Account Agreement governs the opening and maintaining of the Account, and Nirav is only seeking economic losses for Wells Fargo's opening and maintaining of the Account [Ex. A, pp. 118:7- 119:2], Nirav's negligence claim is barred by North Carolina's economic loss rule, and its allegations are "properly addressed by a determination of whether [Wells Fargo] adequately fulfilled its contractual obligations." *Dillon v. Leazer Grp., Inc.*, 374 F. Supp. 3d 547, 558 (E.D.N.C. 2019) (holding that plaintiff's claims were barred by the economic loss rule "because they [were] not distinct from breach of contract, they arise in the course of contractual performance, and they are properly relegated to the arena of contract law").

### C. Wells Fargo did not owe Nirav a duty of care with regard to the Account.

To the extent not barred, Nirav's negligence claim also fails because Wells Fargo does not owe Nirav a general duty not to be negligent in the transaction of its business. Stated differently, with regard to the Account, Wells Fargo owed a duty of care to the Account's owner, Karen Paige, and did not owe a general duty to Nirav, or any other customer, with regard to its maintenance of that Account,[6] particularly here, where the allegations are centered on Wells Fargo's "duty" to generally prevent fraud. [Doc. 1-1, ¶ ¶ 42-45]

---

The rationale of the economic loss doctrine is no less applicable, however, since Wells Fargo and Nirav's relationship is still contractual in nature; it is simply created and governed by a different Account Agreement.

[6] Beyond duties owed with regard to the Account, Wells Fargo does not, as Nirav asserts, owe Nirav a general duty to prevent independent criminal actors from engaging in internet fraud. In short, Wells Fargo owes no legal duty

"Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Davidson v. Univ. of N.C. at Chapel Hill*, 543 S.E.2d 920, 926 (N.C. App. 2001) (quoting *Pinnix v. Toomey*, 87 S.E.2d 892, 897 (N.C. 1955)); *see also Sterner v. Penn*, 583 S.E.2d 670, 673 (N.C. App. 2003) ("The *sine qua non* of a negligence claim is a legal duty owed by defendant to the plaintiff.") (citing *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224 (4th Cir. 2002)). Here, Nirav admits that the Account belonged to a third party and that Nirav was not associated with the Account in any way. [Doc. 1-1, ¶ 23]. As a result, ***Nirav was a non-customer of the Account***. Absent a special relationship, there can be no duty between a bank and a non-customer. Moreover, applicable authority holds that a bank does not owe a duty to a non-customer regarding the opening and maintenance of an account with another customer. *See Eisenberg*, 301 F.3d at 222 (concluding that Wachovia owed no duty of care to a third-party non-customer).

While factually distinguishable, the rationale of *Eisenberg* is on point. There, the Court explained that a bank's legal duties did not extend to non-customers because such liability would "be contrary to the normal understanding of the purpose of a bank account and would expose banks to unlimited liability for unforeseeable frauds." 301 F.3d at 226. Here, if Wells Fargo's duties to Nirav were to extend to all of Wells Fargo's accounts (i.e. those outside its contractual customer relationship) then its liability to Nirav – and all of its customers – would be unlimited. Taking Nirav's argument to its logical conclusion, Wells Fargo would potentially be liable to any of its customers any time another customer fell victim to fraud. Such liability is illogical and contrary to the reasoning set forth in *Eisenburg*.

---

to monitor, investigate, or uncover criminal activity at large, especially with regard to accounts belonging to other customers.

A recent decision out of the California Court of Appeal, Fourth District, confirms this conclusion. In *Kurtz-Ahlers, LLC v. Bank of America, N.A.*, a freelance bookkeeper added the fictitious business name "Income Tax Partners" to her personal bank account and convinced her employer, Kurtz-Ahlers, to write its income tax payments to Income Tax Partners. *Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal. App. 5th 952, 954, 262 Cal. Rptr. 3d 420, 422 (2020). The bookkeeper deposited more than $700,000 worth of checks made payable to "Income Tax Partners" into her personal bank account before Kurtz-Ahlers discovered the scam. *Id.* Kurtz-Ahlers sued Bank of America (both its and the bookkeeper's bank) for negligence on the basis that Bank of America acted negligently in failing to monitor the bookkeeper's account for fraudulent activity. *Id.* In confirming the lower court's denial of the negligence claim, the Court of Appeal concluded that "overriding policy considerations preclude[d] the existence of an 'intra-bank' monitoring duty under general tort principles." *Id.* at 962. Specifically, the Court of Appeal noted that where the relationship between the parties is founded on contract, liability in negligence for purely economic losses requires a showing that public policy mandates a duty of care, which the Court of Appeal did not find, specifically pointing to the disproportionate burden such a duty would place on banks and the effect it would have on slowing down modern day banking. *Id.* at 960.

As established by both *Eisenburg* and *Kurt-Ahlers*, banks do not owe a duty of care to all accountholders on all accounts. Instead, banks owe a contractual duty of care to the accountholder with respect to the accountholder's account *only*. *See Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 545, 71 Cal. Rptr. 2d 462, 470 (1998) (holding that the bank-customer contractual relationship "entails no contractual obligation to persons other than the account holder."). Accordingly,

although Nirav is a Wells Fargo customer, Wells Fargo did not owe Nirav the duties asserted in its negligence claim, and as a result, its negligence claim fails.

**D. Nirav cannot prove that Wells Fargo failed to exercise ordinary care by opening a "fake account" for fraudulent purposes.**

Nirav is also unable to prevail on its negligence claim because it cannot prove that Wells Fargo failed to exercise ordinary care in opening and maintaining the Account. Under North Carolina law, "[n]egligence is the failure to exercise proper care in the performance of a legal duty owed by a defendant to a plaintiff under the circumstances." *Cassell v. Collins*, 344 N.C. 160, 472 S.E.2d 770, 772 (1996). The Court has already determined that: "Nirav's state law negligence claim [may] proceed to the limited extent Plaintiffs rely on conduct relating to the opening and maintaining of a fraudulent account." [Doc. 18, p. 7]. Thus, the inquiry into Wells Fargo's duty of care is limited to the narrow issues of opening and maintaining of the Account, which the evidence establishes Wells Fargo did in accordance with applicable policies, regulations, and laws. [Ex. D, ¶¶ 5-7, 10].

First, Wells Fargo exercised ordinary care in allowing Karen Paige to open the Account as her personal savings account. [Ex. D, ¶¶ 5-7; Ex. E]. Specifically, Wells Fargo properly verified Ms. Paige's identity at the time the Account was opened by verifying her Social Security Number and reviewing two forms of identification, namely, her driver's license and a credit card issued in her name. [Ex. D, ¶ 7; Ex. E; Ex. F, p. 92:4-11]. Wells Fargo also used the Early Warning System, a third party platform, to confirm that there was no negative banking history associated with Ms. Paige's name and/or social security number for the last three years, and thus that there was not an

increased risk of misuse of the Account.[7] [Ex. D, ¶¶ 8-10; Ex. F, p. 88:9-21]. Wells Fargo exercised ordinary care in opening the Account. [Ex. D, ¶ 9; Ex. E]. Nirav has admitted as much. [Ex. A, p. 98:18-22].

Further, Ms. Paige has been a customer with Wells Fargo (and its predecessors-in-interest) since 2004, and prior to the Wires in May 2019, the Account was in good standing with no history of red flags or suspicious activity. [Ex. D, ¶ 10]. There is not a single shred of evidence that the Account, which predates the Wires by nearly five years, was opened or maintained without care, in bad faith, or for any purpose other than as a legitimate savings account for Karen Paige, a middle-aged woman from Gainesville, Florida.[8] [Ex. E]. There's no evidence that proper maintenance of the Account required Wells Fargo to constantly monitor and surveil every transaction that occurred in the Account. [Ex. F, p. 107:7-16]. To do so would eviscerate the ease and convenience of modern day banking and result in significant increased costs for the customer. Not to mention, it would put Wells Fargo in the impossible position of tracking – and questioning – every single transaction that occurs in every single account owned by every single customer; transactions numbering in the billions each day. Nirav cannot prove that such an inefficient and ineffective duty exists because it failed to notice any experts and thus can offer no evidence of the duty of care owed by banks to customers with regard to maintenance of their accounts. There is no

---

[7] Use of the Early Warning System in the opening of an account is industry standard for banks similarly situated to Wells Fargo. Nirav is unable to disprove this standard without expert testimony, which Nirav cannot offer because it failed to disclose a single expert witness (on banking industry standards or otherwise).

[8] In its Complaint, and throughout discovery, Nirav has used the term "Hacker" carelessly, conflating and confusing Ms. Paige, an innocent third party, with the unknown, criminal Hacker. Nirav assumes, without proof, that Ms. Paige is the Hacker but has not conducted any discovery to support its theory. The more likely scenario, which Nirav has likewise failed to investigate, is that Ms. Paige was victimized by the Hacker's phishing emails just like Plaintiffs.

evidence in the record on the issue, and there can never be any evidence in the record without expert testimony. Simply put, Nirav cannot meet its burden of proof.

Nirav's inability to establish a breach of Wells Fargo's duty of care requires dismissal of its negligence claim. Not only does the evidence show that Wells Fargo exercised ordinary care in opening and maintaining the Account, but it also establishes that the Account was not fake or fraudulent, and Nirav cannot offer any expert testimony to establish the duty of care or Wells Fargo's alleged breach of the same.

### E. Wells Fargo did not proximately cause the Wires or resulting loss.

Finally, even if Nirav could prove that Wells Fargo failed to exercise ordinary care in its opening and maintaining of the Account (it did not), it cannot prove as a matter of law that Wells Fargo proximately caused any losses incurred as a result of opening and maintaining the Account.

Under North Carolina law, proximate cause consists of two elements: causation in fact and foreseeability. To determine whether causation exists, North Carolina courts generally follow the "but-for" test: whether there is such a natural, direct, and continuous sequence between the negligence act or omission and the plaintiff's injury that it can be reasonably said that but for the negligent act or omission the injury would not have occurred. *In re NC & VA Warranty Co., Inc.*, 594 B.R. 316, 344 (Bankr. M.D.N.C. 2018), *amended,* No. 15-80016, 2018 WL 5113131 (Bankr. M.D.N.C. Oct. 18, 2018) (explaining causation under North Carolina law). Put another way, the test of proximate cause in a negligence action is whether the risk of injury, not necessarily in the precise form in which it actually occurs, is within the reasonable foresight of the defendant. *Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 836 S.E.2d 322 (N.C. Ct. App. 2019). Pursuant to this well-established law, "if between defendant's negligence and subject's injury, there occurs an intervening […] act that could not have been reasonably foreseen by the original tortfeasor, the

causal chain between the original negligence and the accident is broken." *D'Alessandro v. Westall*, 972 F. Supp. 965 (W.D.N.C. 1997).

Here, the causal chain is too attenuated for Nirav to prevail. Nirav alleges that Wells Fargo should not have maintained the Account or allowed it to be opened. [Doc. 1-1, ¶¶ 60(b), 60(c)(i)]. But the opening and maintenance of the Account is not, and cannot be, tied to the injury. The Account was opened more than five years prior to the Wires for an innocent third party who Nirav cannot prove had any knowledge of or connection to the Hacker. [Ex. A, pp. 98:23 – 99:1; Ex. D, ¶¶ 4, 10; Ex. E]. *See D'Alessandro*, 972 F. Supp. at 973 (holding that proximate cause will not be found if there are no reasonable grounds for the defendant to anticipate the subsequent, superseding acts). Wells Fargo could not have foreseen that opening the Account for Ms. Paige in September 2014 would lead to Ash falling victim to Hacker's fraudulent email scheme in May 2019. [*See generally* Ex. A, p. 118 (Doshi's testimony regarding Nirav's damages)]. The Hacker's unforeseeable fraudulent email scheme effectively severs any causal connection that might otherwise exists. [Ex. A, p. 60:24-64:17 (describing the suspicious email)].

The casual chain is further severed by Ash and Nirav's own contributory negligence. *See Riggs v. Akers Motor Lines*, 233 N.C. 160, 165, 63 S.E.2d 197, 201 (1951) (holding that a subsequent negligent act will break the causal chain if it is "disconnected from the primary fault, and self-operating, which produced the injury."). Here, even if Wells Fargo were found to have negligently opened and maintained the Account in 2014 (again, it did not), Ash and Nirav's failure to implement adequate security procedures to protect their email accounts and bank information constitutes superseding contributory negligence which insulates any alleged negligence committed by Wells Fargo.

Nirav has admitted that it did not provide technology training to its employees but would "periodically bring[] awareness" of any phishing emails. [Nirav Ingredients, Inc.'s Responses to Wells Fargo Bank, N.A.'s First Interrogatories, attached hereto as Exhibit K, No. 11]. Mr. Doshi has further admitted that Nirav only enacted security measures to protect its bank information *after* the Wires. [Ex. A, p. 22:21 – 23:25; *see also* June 4, 2019 Letter from Nirav Ingredients to Ash Ingredients, Inc., attached hereto as Exhibit L ("For any change in our company/bank details in future, we shall send the same to you on our letterhead…"). Prior to the Wires, Nirav freely transmitted its bank information by unsecured email. [Ex. L]. Neither Nirav nor Ash offered *any* training to employees regarding electronic funds transfers and/or the FedWire system. [Ex. K, No. 14; *see also* Ash Ingredients, Inc.'s Responses to Wells Fargo Bank, N.A.'s First Interrogatories, attached hereto as Exhibit M, No. 11]. Both Nirav and Ash were freely conducting billing and payment activities, including electronic wires, via unsecured emails transmitted by employees who were not offered, and never received, training or instruction from their employer. This negligent conduct by Plaintiffs allowed Hacker to breach their email accounts and intercept their bank information to his advantage. Plaintiffs (and, as discussed above, Hacker) were the proximate cause of the losses alleged in the Complaint, not Wells Fargo.[9] Plaintiffs cannot prove that Wells Fargo could have foreseen this conduct by Plaintiffs and Hacker, and certainly not as a result of its opening and maintaining the Account. Thus, as a matter of law, summary judgment is warranted in favor of Wells Fargo as to Nirav's negligence count.

---

[9] Nirav also attempts to argue that Mr. Doshi's personal medical issues are somehow connected to Wells Fargo's allegedly negligent acts. [*See, e.g.,* Ex. A, p. 118:24; 119:11-119:23]. Even if Mr. Doshi's pre-existing medical issues were somehow connected (which they are not), the *corporation* is the plaintiff, not Mr. Doshi personally.

## REQUESTED RELIEF

WHEREFORE, Wells Fargo respectfully requests that the Court enter an order granting its Motion for Summary Judgment and dismissing Plaintiff Nirav Ingredients, Inc.'s negligence claim against Wells Fargo.

Respectfully submitted on the 14th day of April, 2021.

*s/ Mignon A. Lunsford*
MIGNON A. LUNSFORD
N.C. Bar No. 46220
VICTOR L. HAYSLIP
*Admitted Pro Hac Vice*

*Attorneys for Defendant,*
*Wells Fargo Bank, N.A.*

**OF COUNSEL:**

Mignon A. Lunsford
N.C. Bar No. 46220
BURR & FORMAN LLP
421 Fayetteville Street
Suite 1100, Office 1140
Raleigh, NC 27601
Telephone: (919) 334-4710
Tel Direct: (919) 334-4709
mlunsford@burr.com

Victor L. Hayslip
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: 205-251-3000
Facsimile: 205-458-5100
vhayslip@burr.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on April 14, 2021:

Corey V. Parton
Parton & Associates, PLLC
122 North McDowell Street
Charlotte, NC 28202
Parton@PartonNC.com

David G. Redding
Ty K. McTier
Redding & Jones, PLLC
2907 Providence Road, Suite A303
Charlotte, NC  28211
dredding@reddingjones.com
tmctier@reddingjones.com

*s/ Mignon A. Lunsford*
OF COUNSEL
