# Exhibit B

Exhibit B

**In the Matter Of:**

## NIRAV INGREDIENTS vs WELLS FARGO BANK

3:20-cv-366

## ANIL KRIPALANI

*March 10, 2021*

Case 3:20-cv-00366-FDW    Document 27-2    Filed 04/14/21    Page 2 of 18

Q.   And are you by yourself?

A.   In my office by myself, yes.

Q.   And tell me what Ash Ingredients does, please.

A.   Ash Ingredients manufactures and imports ingredients which are used for personal care and pharmaceutical applications.

Q.   Give me an example.

A.   Give you an example, we do import Benzophenone-3, which is an active ingredient of sun screen formulations and we supply to various large commercial companies.

Q.   Got you.  And you would buy some of those products, for example, from Nirav?

A.   We buy products from Nirav, yes.

Q.   Are you the owner of Ash Ingredients?

A.   My wife is the owner.  She is 100 percent shareholder of Ash Ingredients.

Q.   And what is your role?

A.   I'm the president of Ash Ingredients.  I manage the day-to-day operations of Ash Ingredients.

Q.   All right.  And how many employees are there at Ash?

A.   Eight.



Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 3 of 18
Exhibit B

that correct?

A. That's correct.

Q. Wells Fargo played no role in initiating that wire transfer; is that correct?

A. That's correct.

MR. PARTON: Object to form.

BY MR. HAYSLIP:

Q. Ash's bank was Citibank in connection with that transaction; is that correct?

A. Yes.

Q. Did you all utilize at Ash Ingredients other banks other than Citibank?

A. No, Citibank is the primary bank for Ash Ingredients.

Q. Okay. Is there any other bank that you utilized?

A. No.

Q. The wire that -- and I'm going to get into the specific information that was provided to you to initiate that wire, but I want to confirm that Wells Fargo didn't provide any information whatsoever to Ash in order to initiate that wire transfer, correct?

A. That's correct.

MR. PARTON: Object to form.



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

notice, and that's what you were supposed to be here to testify as to those issues, so you're saying you're not prepared to testify to those issues?

MR. McTIER:  Objection.

THE WITNESS:  I'm prepared to testify about anything you want me to testify about.

BY MR. HAYSLIP:

Q.   That's what I'm asking about, did Nirav -- did Ash do anything, whatsoever, to confirm the accuracy of the information being provided in Exhibit 1 to wire the money to a new Wells Fargo bank account?

A.   No, we didn't.

Q.   Okay.  And if Legna had called Nirav Ingredients and said, hey, we got your e-mail about wiring it to a different bank account, you'll agree with me that would have alerted Ash to the fact that this was a false or scam e-mail, correct?

MR. PARTON:  Objection, speculation.

MR. HAYSLIP:  Okay.  You may answer, Mr. Kripalani.

THE WITNESS:  Repeat your question, please.



it no --

A.   I'm saying --

Q.   Let me finish.  That's why I said, I'm not -- I want you to understand, I'm not telling you what answer I want, I would just like an answer.  And that's why I said, you can answer yes, you can answer no, or you can answer I can't answer that yes or no, I didn't care, but you couldn't answer any three of those?

MR. PARTON:  Objection.  He doesn't have to pick one of yours answers.

MR. HAYSLIP:  No, I agree, but I gave him the whole option of the world, there was not a limitation.

MR. PARTON:  You gave him answers on this.

BY MR. HAYSLIP:

Q.   When Ash Ingredients received Exhibit 1 -- let me ask you this, did it lift a finger to validate any of the information that was in that e-mail directing the wire payments to be made to a new Wells Fargo account?

MR. PARTON:  Objection to form.

MR. HAYSLIP:  You may answer.

THE WITNESS:  No.



BY MR. HAYSLIP:

Q.   Okay.  Did anyone at Ash Ingredients validate that, in fact, it was coming from a correct e-mail address of Nirav Ingredients?

A.   No.

Q.   Okay.  Had anyone -- had anyone at Nirav Ingredients in the history of your relationship with Nirav Ingredients ever send out any notification, letter, or any other form, any notification, that its vendors were never to wire money to a different account from the account which you had been previously using?

MR. McTIER:  Objection to form.

THE WITNESS:  Are you saying before or after?

BY MR. HAYSLIP:

Q.   Let's start with before.  You had the account that you were always using, you never had a problem with it, right?

A.   Correct.

Q.   Before May of 2019, had Ash Ingredients ever received any kind of form of communication from Nirav Ingredients saying, don't ever wire money to us other than the account which you previously used unless you receive instructions

ESQUIRE
DEPOSITION SOLUTIONS

Case 3:20-cv-00366-FDW    Document 27-2    Filed 04/14/21    Page 7 of 18

**Exhibit B**

from us via mail or verbal?

A. There was no necessity, the process was moving fairly smoothly, so why would we be receiving any additional information.

Q. So is the answer, no, you never received such a communication?

A. No.

Q. Okay.

A. Before May 19th, no.

Q. You never received any kind of communication saying, don't send money to a different account without verbal confirmation or anything like that?

A. No.

Q. No you had not. Okay.

After May of 2019, did you ever receive any communication from Nirav along those lines?

A. Yes.

Q. And what kind of communication did you receive?

A. Communication that was received was both Nirav and Ash put into a process that nothing is going to go into anybody's account unless you have a written document certified and signed by both parties.

Q.   Okay.  And that is --

A.   That was the corrective action that was implemented.

Q.   And was that implemented by -- whose idea was it to implement that?

A.   It was a joint idea, both Nirav and Ash decided how do we prevent these things from happening in the future, we implemented that idea -- I've implemented that idea with all of my suppliers.

Q.   I got it.  And I'm done with that, I was really trying to get kind of the history of the relationship and how you got to where you are today.  Have you learned through this process whose system, either Ash or Nirav, was hacked in order to enable that e-mail that was sent to you, which is Exhibit 1, to have been sent?

A.   Could you repeat the question, please?

Q.   Yes, that was a pretty poor question. Thank you for asking me.

     Clearly, the e-mail, which is Exhibit 1, came from a source that was not Nirav Ingredients, correct?

A.   Correct.

Q.   And when that e-mail came, they were

Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 9 of 18
Exhibit B

aware that somehow that there was a business relationship between Ash and Nirav, and that there were payments due from Ash to Nirav, correct?

A. Correct.

Q. My question is, in order to send that e-mail, somebody's system had to be hacked, do you know if it was Ash Ingredients' or Nirav Ingredients' who got hacked?

A. It was Nirav Ingredients' system that got hacked.

Q. Okay. And how did you learn that?

A. Because, first of all, Ash has a very secure system, it's got all the firewalls, and all, in place and never been hacked. And we checked with our IT people, and they said your system is not being compromised, it's the other side's system that has been compromised, which was, again -- which was verified and validated by Nirav that he was hacked.

Q. Okay. And did he tell you that?

A. We asked him and he advised us that their system was hacked.

Q. Got it. Okay. Are you aware of anything that Nirav Ingredients did to avoid the

ESQUIRE
DEPOSITION SOLUTIONS

Exhibit B

THE WITNESS:  I'm not aware.

BY MR. HAYSLIP:

Q.   Okay.  Did you see the complaint in this lawsuit before it was filed, Mr. Kripalani?

A.   Yes, I did.  Yes, I did.

Q.   Okay.  And you approved it to be filed like it was filed?

A.   Yes.

Q.   All right.  And, well, I'll get to that question.  Have you seen the court order entered regarding the dismissal of certain claims?

A.   Yes.

Q.   You're aware that the order reflects, too, that Ash Ingredients has not asserted any claims in this lawsuit?

MR. PARTON:  Objection, legal conclusion.

BY MR. HAYSLIP:

Q.   You read it, right?

A.   Yes.

Q.   You're aware that -- did you see that in the order?

A.   I don't -- let me review the order.  I can't recall and remember.

Q.   Okay.  You can't recall -- I'm sorry,

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 11 of 18

Exhibit B

you can't recall something, but I didn't hear what you said?

A.   I said I can't recall or remember.

Q.   Okay.  So you don't know if the order said that Ash Ingredients had not asserted any claims or not?

A.   If you give me a minute to review it, and I'll come back to you.

Q.   We will do that.  I'll go ahead, you do that on the break, if you want to do that, so I can move it along and I'm not holding you up or anybody else up.

What's the current status of the invoices reflected that were supposed to have been paid by the wire transfer you sent on May 21st and May 24th.

A.   Well, the current is, as far as Ash Ingredients, it's paid Nirav those invoices in full.

Q.   Okay.  Got it.  So on Ash Ingredients' books and records, those invoices are shown as paid, not outstanding?

A.   Paid, correct.

Q.   Has that issue ever been discussed with Nirav Ingredients?

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 12 of 18
Exhibit B

A.   Yes, that, as far as Ash is concerned, those invoices are paid.

Q.   Okay.  Did they dispute that?

A.   No, they did not dispute that.  As far as in their books, it's an outstanding, because of the claim that they have against Wells Fargo.

Q.   Okay.  Has Nirav Ingredients sent any past due invoices to -- excuse me, I may have misstated that.  Has Nirav Ingredients sent any past due notices or invoices with respect to the two wires that were sent?

A.   No.

Q.   And, as I understand it, you've informed Nirav Ingredients that Ash Ingredients considers those invoices paid?

A.   That's correct.

Q.   And shows that they have been paid on your books and records, and Nirav has never disputed that to you?

A.   They have disputed that they have not received the payment because of the issue that happened with Wells Fargo.

Q.   I understand that, and I didn't mean to imply that that was the case.  And I understand they have a dispute with Wells Fargo, and that's

Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 13 of 18
Exhibit B

what we are here about.  With respect to its

relationship with Nirav Ingredients and Ash

Ingredients, they have never disputed that your

position that the accounts have been paid and are

current?

A.   That's correct.

Q.   Okay.  Is this the only -- I think you

might have mentioned this earlier.  You never had

a problem with any wire transfers to any other

vendors, this is the only one?

A.   This is the only one -- that's the only

one that has ever happened to us.

Q.   Okay.  With respect to the account where

the wires were sent by Ash Ingredients, do you

know whose account Ash actually sent the money?

A.   No, I don't know.  I know Ash sent the

money to Nirav, because it's clearly stated in

the wire transfer, the name of the company, the

exact address of the company, and then the

account number, that's all Ash is aware of.

Q.   And do you know whose account number you

utilized in sending that wire?

A.   Nope.

Q.   You hadn't gone through documents, or

anything like that, to look and see?

Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 14 of 18
Exhibit B

MR. HAYSLIP:  Is that right?

THE WITNESS:  That's correct.

BY MR. HAYSLIP:

Q.  So in connection with the complaint or lawsuit, which is what we are here about today, are you aware of any claims that Ash Ingredients has asserted?

MR. PARTON:  Objection, legal conclusion.

THE WITNESS:  Any claims that Ash Ingredients has asserted, no.  The claim is that Ash Ingredients is supporting the claims that Nirav asserted.

BY MR. HAYSLIP:

Q.  You're not aware of any claims that Ash has asserted by itself?

MR. PARTON:  Objection.

THE WITNESS:  No.

BY MR. HAYSLIP:

Q.  Okay.  And you're not aware of any damages that Ash Ingredients has asserted, are you?

MR. PARTON:  Objection.

THE WITNESS:  No.

BY MR. HAYSLIP:

Case 3:20-cv-00366-FDW    Document 27-2    Filed 04/14/21    Page 15 of 18
Exhibit B

Q.   Okay.  Because, as far as your records show, your account is paid up with Nirav Ingredients, correct?

THE WITNESS:  That's correct.

MR. PARTON:  Objection.

BY MR. HAYSLIP:

Q.   Did you say that's correct?

A.   Yes, that's correct.

Q.   Okay.  To the best of your knowledge, has Nirav Ingredients or Ash Ingredients done anything to try to track down whoever the hacker was into the Nirav Ingredients account?

MR. PARTON:  Objection.

THE WITNESS:  Ash Ingredients has not.

BY MR. HAYSLIP:

Q.   Okay.  Are you aware of whether or not -- I'm sorry.

MR. PARTON:  Just on the compound thing, I was going to ask you to break those things up.

MR. HAYSLIP:  Well, you still want me to go back?

MR. PARTON:  No, I think he answered.

MR. HAYSLIP:  I think he corrected it with his answer, too, yes.  And I agree with you, it was compound.

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 16 of 18
Exhibit B

Q.   And you testified that there was some changes, right?

A.   That's correct.

Q.   And can you say, again, what those changes were?

A.   The changes that were implemented was that -- and -- that no account number is going to be -- no changes to an account number or transfer is going to be conducted with information received via e-mail.  It has to come in a form of a hard copy in a registered mail, and both parties have to countersign and agree, that is supplier and the vendor.

Q.   And there is still ways that that could be hacked, right?

MR. HAYSLIP:  Object to form.

THE WITNESS:  That's correct.

BY MR. PARTON:

Q.   Could someone hack the hard mail, for example?

A.   These days, anything is possible.  I don't know.  I don't think so.  Hard mail, if it's a registered document, it cannot be.

Q.   Could somebody get into that mail and change the form and just reseal it and send it to

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

Case 3:20-cv-00366-FDW   Document 27-2   Filed 04/14/21   Page 17 of 18
Exhibit B

you?

MR. HAYSLIP:  Asked and answered, he just answered it.

THE WITNESS:  No.

BY MR. PARTON:

Q.  Via the way that you've changed the policies and procedures, would Wells Fargo now today still be able to prevent fraud if the wrong account number was given?

MR. HAYSLIP:  By whom?

MR. PARTON:  I'm sorry.

MR. HAYSLIP:  Wrong account given by whom, given to Wells, you mean?

MR. PARTON:  I don't know that he misunderstood the question.  I can repeat it if you didn't like the form.

MR. HAYSLIP:  You're right, I'll object to the form.

THE WITNESS:  Can you repeat the question, please?

BY MR. PARTON:

Q.  My question was, if anybody changed the account number, fraudulently, similar to what happened in this case, could Wells Fargo prevent that by checking the account number against the

Case 3:20-cv-00366-FDW    Document 27-2    Filed 04/14/21    Page 18 of 18

**Exhibit B**