# Exhibit M

Exhibit M

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CASE NO. 3:20-cv-366

NIRAV INGREDIENTS, INC. and ASH INGREDIENTS, INC., )
)
)
Plaintiffs, )
)
v. )
)
WELLS FARGO BANK, N.A. and JOHN DOE(S), )
)
)
Defendants. )

**ASH INGREDIENTS, INC.'S RESPONSES TO WELLS FARGO BANK, N.A.'S FIRST DISCOVERY REQUESTS**

**NOW COMES** Plaintiff Ash Ingredients, Inc. (hereinafter referred to as "Ash" or "Plaintiff") to answer Defendant Wells Fargo Bank, N.A.'s (hereinafter referred to as "Wells Fargo" or "Defendant") First Discovery Requests (hereinafter referred to as "Discovery Requests") to Plaintiff as follows:

## GENERAL OBJECTIONS & QUALIFIERS

1. Plaintiff objects to each interrogatory and request that to the extent each such interrogatory or request is not reasonably calculated to lead to the discovery of admissible evidence.

2. Plaintiff objects to the scope of each interrogatory and request that to the extent each such interrogatory or request seeks information that was prepared or obtained by or on behalf of Plaintiff's attorneys in anticipation of any litigation within the scope of the work-product privilege or that constitutes confidential attorney-client communications.

3. Plaintiff objects to the scope of each interrogatory and request to the extent that each such interrogatory or request seeks information that contains confidential information or research that is not adequately protected under the terms of an appropriate protective order agreed upon in this case.

44322627 v1

Exhibit M

4. Plaintiff objects to the scope of each interrogatory and request to the extent that each such interrogatory or request seeks information not properly discoverable under the Federal Rules of Civil Procedure.

5. Plaintiff objects to the definitions and instructions to the extent they seek to impose obligations other than those set forth in the Federal Rules of Civil Procedure.

6. Plaintiff objects to the scope of each interrogatory or request to the extent that each such interrogatory or request is overly broad and unduly burdensome in that it fails to specify a reasonable or relevant time period.

7. Plaintiff objects to the scope of each interrogatory or request to the extent that each such interrogatory or request seeks information and/or documents that are outside of Plaintiff's possession, custody, or control.

8. Plaintiff assumes no duty to supplement its responses except to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

9. The responses set forth herein are made to the best of Plaintiff's present knowledge, information and belief. These responses are at all times subject to additional or different information, knowledge or facts that discovery or further investigation may disclose, and Plaintiff therefore reserves the right to supplement these responses as discovery proceeds in this case, as additional information becomes available, and pending ongoing investigation.

10. Plaintiff does not admit that any document requested or produced is relevant to any claim or defense in this action or that any such document is authentic or otherwise meets any of the requirements of admissibility.

11. Plaintiff objects to the extent these Discovery Requests seek to impose definitions and/or instructions beyond what is set forth in the Federal Rules of Civil Procedure.

12. Any response stating that responsive documents, if any, will be produced is not a representation that such documents exist or are in Plaintiff's custody, or control, but only that such documents will be produced if they do exist and are found in the Plaintiff's possession, custody, or control based upon a reasonable search.

2

Exhibit M

13. Subject to and without waiver of the forgoing General Objections, Plaintiff responds as follows:

**INTERROGATORIES**

1.  Identify any and all written contracts between you and Wells Fargo.

**RESPONSE:**

Plaintiff objects to this Interrogatory on the grounds that the information requested is more readily and easily obtainable from another source: Defendant. Defendant is a large multi-national corporation who provides banking services to hundreds of thousands of individuals and businesses for a profit; and, as such, they should have a system and process for easily and readily identifying all written contracts with their customers like Plaintiff. Defendant is in a much better position to accurately identify every document that was signed by Plaintiff over the course of their customer-relationship ie. in a branch, on the internet etc. Without waiving any objections, Plaintiff has been unable to locate or identify the specific written contracts that it had with Defendant after a reasonable diligent inquiry. Plaintiff reserves the right to supplement this response as new information becomes available through further investigation and discovery.

2.  Identify any basis for your averment that Wells Fargo (a) owed you an implied contractual duty and/or (b) breached that duty.

**RESPONSE:**

Defendant failed to take the minimum steps necessary to verify the identity of the Hacker before allowing Hacker to open the Fake Account. Defendant should have known that the person opening the account was in no way affiliated with Plaintiffs.

1.      Identify any basis for your averment that Wells Fargo (a) owed or (b) breached a duty of good faith and fair dealing to Plaintiff.

**RESPONSE:**

**Defendant failed to take the minimum steps necessary to verify the identity of the Hacker before allowing Hacker to open the Fake Account. Defendant should have known that the person opening the account was in no way affiliated with Plaintiffs. Whether such duties amount to a breach of good faith and fair dealing is a legal conclusion to which no response is required, but Plaintiffs do maintain that the foregoing actions do amount to a breach of a duty of care.**

2.      Identify any basis under which you contend Ash is entitled to recover its attorneys' fees.

**RESPONSE:**

**Without waiving any objections, Plaintiff contends the North Carolina Unfair and Deceptive Trade Practices Act authorizes attorney's fees to be awarded to a prevailing party, and North Carolina General Statutes authorize attorney's fees to be awarded in certain instances involving claims for breach of contract as well as when the Court determines the non-existence of a justiciable issue of law or fact, as well as any other legal, statutory or equitable grounds permitting such an award.**

3.      Describe the relationship between Ash and Nirav from January 1, 2018 to present.

**RESPONSE:**

**Without waiving any objections, Plaintiff contends Plaintiff's relationship with Nirav is valuable and important to Plaintiff's business. During the period inquired about, Plaintiff and Nirav have conducted transactions the value of which has totaled approximately $1.6 million dollars.**

Exhibit M

4. Identify any contracts between Ash and Nirav from January 1, 2018 to present.

**RESPONSE:**

**Plaintiff objects on the grounds that this Interrogatory calls for a legal conclusion about whether a legal contract existed, and Plaintiff is not qualified or capable of rendering such an opinion nor is it Plaintiff's role to do so in a legal proceeding, and therefore no response is required. Without waiving any objections, Plaintiff contends that there are no written contracts that are responsive to this Interrogatory.**

5. Identify every payment Ash made to Nirav from January 1, 2018 to present.

**RESPONSE:**

**Without waiving any objections, Plaintiff directs Defendant to Exhibit N attached to these Discovery Responses which contains the information responsive to this Interrogatory.**

6. Identify every item of damages Ash is claiming in this action and how you arrived at that figure ("show your math").

**RESPONSE:**

**Without waiving any objections, Plaintiff is seeking a return of the unauthorized transfer of funds to John Doe(s)' account with Defendant, or a damages award equal to the amount of that unauthorized transfer, for treble damages, costs, interest as permitted by law, and attorney's fees, as well as any other damages recoverable by law.**

7. State the name, address, and telephone number of any person known or believed to have discoverable information with respect to any of the facts and circumstances giving rise to the allegations in the Complaint, and for each person, state what information that person is known to have or believed to have.

**RESPONSE:**

**Exhibit M**

Without waiving any objections, Plaintiff contends the following people have discoverable information with respect to any of the facts and circumstances giving rise to the allegations in the Complaint:

a. Anil Kripalani, ███████-1752, President of Ash Ingredients, Inc., ███@ashingredients.com;

b. Legna Garcia-Rodriguez, ███@ashingredients.com

c. Phetmany Falconi, ███@ashingredients.com

d. Legna Garcia, Executive Assistant to Ash Ingredients, Inc.;

Office number: ███-1322 Ext. 106;

Mobile number: ███-9798;

Office Address: 65 Harristown Road, Glen Rock, NJ 07452;

Residence Address: ████████ Apt. 2 Newmark, NJ 07107.

Ms. Garcia is the executive assistant to Anil Kirpalani. One of her responsibilities is to prepare all invoices to be paid according to the due date and present it to Mr. Kripalani for payment.

8.    Does Ash provide any technology training to employees? Specifically, does Ash provide any guidance for phishing or other email scams?

**RESPONSE:**

Without waiving any objections, Plaintiff contends that since approximately 2006 it has used the services of an outside information technology vendor, Integrated Computer Services, Inc., which manages Plaintiff's electronic and online systems, servers, e-mails, and electronic communications and activity to ensure Plaintiff's online activity is always secure.

6

Exhibit M

Integrated Computer Services, Inc. Is also responsible for training Plaintiff's employees on the safe and secure use of Plaintiff's electronic and online systems, servers, e-mails, and electronic communications and activity. All employees (including those at management level) are monitored by Integrated Computer Services, Inc. and are tested randomly with fake phishing e-mails to ensure ongoing compliance.

9. Does Ash provide notation for "external" or email addresses from outside your company?

**RESPONSE:**

**Plaintiff objects to this Interrogatory on the grounds that it does not explain or define "notation for 'external' or email address" and therefore Plaintiff is unable to accurately respond. Without waiving any objections, Plaintiff contends that it does have a system for distinguishing between email addresses that are sent internally, meaning from and to individuals within Plaintiff's organization, and those that are sent externally, meaning from individuals with email addresses outside of Plaintiff's organization.**

10. Describe Ash's procedures in place in May 2019 for sending and receiving electronic funds transfers.

**RESPONSE:**

**Without waiving any objections, Plaintiff contends that in May 2019 only Anil Kripalani was authorized to process wire transfers from the relevant Citi Bank Business account and check to see whether wires were received. No one else in Plaintiff's organization had the authorization to process such electronic payments.**

11. Does Ash offer training (via internal programming or outside conferences, etc.) to employees regarding electronic funds transfers and/or the FedWire system? If so, please describe the training. If so, explain the training and guidance in detail.

**RESPONSE:**

7

**Exhibit M**

Without waiving any objections, Plaintiff refers Defendant to Plaintiff's response to Interrogatory No. 12, and further contends that no employee of Plaintiff had access to Plaintiff's business account at Citi Bank Business other than Anil Kripalani (President) and Shawn Kripalani (CEO), and therefore no such employee training was necessary and did not take place.

12. Describe all technology protections Ash had in place in May 2019 to protect its employees from hacking, phishing, or other email scams.

**RESPONSE:**

Without waiving any objections, Plaintiff contends that in May 2019 Integrated Computer Services had installed and was utilizing the following security features to protect Plaintiff's servers and emails:

- Barracuda Spam Filter with advanced threat protection
- Sonic Wall Fire Wall System
- Web Root Antivirus
- Duo 2 Factor Authentication

13. Identify every Ash employee in May 2019 who played a role in the sending or receiving of electronic funds transfers and for each employee identified, state his or her official job title and duties.

**RESPONSE:**

Without waiving any objections, Plaintiff contends only Anil Kripalani. Mr. Kripalani is the President of Plaintiff's organization. Plaintiff refers Defendant to Plaintiff's responses to Interrogatories Nos. 12 and 13 for information regarding Mr. Kripalani's role relevant to the allegations of the Complaint.

8

14. Describe Ash's basis for alleging that Wells Fargo is aware that its "processes and procedures have allowed for repeated abuse of its system to conduct and facilitate fraudulent wire transfers."

**RESPONSE:**

**Without waiving any objections, Plaintiff directs Defendant to Paragraphs 27, & 41-45 of Plaintiff's Complaint.**

15. State the name, address, and telephone number of every person you expect to call as an expert witness at trial. For each person so identified, please state the subject matter on which the expert is expected to testify; the substance of the facts and opinions as to which the expert is expected to testify; and a summary of the grounds for each opinion.

**RESPONSE:**

**Plaintiff objects to this Interrogatory to the extent it attempts to seek information required to be produced by Section 4(c)(i)(6) of the Case Management Order entered by consent of the parties and issued by the Court on October 1, 2020, which Plaintiff fully intends to comply with regarding the disclosure of the witnesses it intends to call at trial at the appropriate time. Without waiving any objections, Plaintiff contends that it has not identified any expert witnesses that it intends to call at trial at this time.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the following to Mignon A. Lunsford at 421 Fayetteville Street, Suite 1100, Office 1140, Raleigh, North Carolina 27601 or mlunsford@burr.com.

1. Every Document related to the Electronic Funds Transfers identified in the Complaint.

**RESPONSE:**

**Without waiving any objections, and to the extent such responsive documents exist within the reasonable custody, care and control of Plaintiff directs Defendant to the**

9

**Exhibit M**

documents attached to these Discovery Responses, specifically: <u>Exhibit A</u>, <u>Exhibit C</u>, <u>Exhibit D</u>, <u>Exhibit E</u>, <u>Exhibit F</u>, <u>Exhibit M1</u>, and <u>Exhibit M2</u>.

2. Your policies and/or procedures related to electronic funds transfers.

**RESPONSE:**

Without waiving any objections, Plaintiff directs Defendant to the documents attached to these Discovery Responses in conjunction with Plaintiff's response to Interrogatory Nos. 12 and 13.

3. Every Communication or other Document exchanged between you and Wells Fargo related to the matters in this case.

**RESPONSE:**

Plaintiff objects to this Request on the grounds that the information requested is more readily and easily obtainable from another source: Defendant. Defendant is a large multi-national corporation who provides banking services to hundreds of thousands of individuals and businesses for a profit; and, as such, they should have a system and process for easily and readily identifying all communications with their customers like Plaintiff. Defendant is in a much better position to accurately identify and retrieve every communication that it had with Plaintiff over the course of their customer-relationship. Without waiving any objections, Plaintiff directs Defendant to the documents attached to these responses, which Plaintiff has determined constitute the responsive documents that are in Plaintiff's care, custody and control following a reasonable and diligent search.

4. Every Communication or other Document exchanged between you and any non-party related to the allegations and matters in this case.

**RESPONSE:**

10

**Exhibit M**

Without waiving any objections, Plaintiff directs Defendant to the documents attached to these responses, which Plaintiff has determined constitute the responsive documents that are in Plaintiff's care, custody and control following a reasonable and diligent search.

5. Every Document supporting any claim for damages.

**RESPONSE:**

Without waiving any objections, Plaintiff directs Defendant to the documents attached to these responses, which Plaintiff has determined constitute the responsive documents that are in Plaintiff's care, custody and control following a reasonable and diligent search.

6. Every Document identified or reviewed in preparation of your responses to Defendant's first set of interrogatories propounded to you.

**RESPONSE:**

Plaintiff objects on the grounds that this Request seeks information that was prepared or obtained by Plaintiff and/or on behalf of Plaintiff's attorneys in anticipation of any litigation within the scope of the work-product privilege. Without waiving said objection, Plaintiff refers Defendant to the documents attached to these responses which constitute the responsive documents that are in Plaintiff's care, custody and control following a reasonable and diligent search.

7. Every written, recorded, transcribed, or video-recorded statement by witnesses with discoverable information concerning your claims in the Complaint.

**RESPONSE:**

11

**Exhibit M**

Without waiving any objections, Plaintiff, after a reasonable and diligent search, has determined that no recorded witness statements or other tangible materials responsive to this request, are within Plaintiff's care, custody, or control.

8.     Copies of the two invoices pursuant to which Ash was to make payments to Nirav in May of 2019.

**RESPONSE:**

Without waiving any objections, Plaintiff directs Defendant to the documents attached to these Discovery Responses; specifically, Exhibit P.

9.     Account statements demonstrating Ash's payments to Nirav from January 1, 2018 to present.

**RESPONSE:**

Without waiving any objections, Plaintiff directs Defendant to the documents attached to these Discovery Responses; specifically, Exhibit N.

10.     Copies of your credit reports from the last five years.

**RESPONSE:**

Without waiving any objections, Plaintiff directs Defendant to the documents attached to these responses which constitute the responsive documents that are in Plaintiff's care, custody and control following a reasonable and diligent search.

11.     Copy of any emails you received from "ndoshi@niravvgroup.com" from January 1, 2018 to present.

**RESPONSE:**

Without waiving any objections, Plaintiff directs Defendant to the documents attached to these Discovery Responses; specifically, Exhibit C.

12

**Exhibit M**

12. Copy of any emails from "ndoshi@niravgroup.com" directing Ash to wire the outstanding invoice funds to Nirav from January 1, 2018 to present.

**RESPONSE:**

**Without waiving any objections, Plaintiff directs Defendant to the documents attached to these Discovery Responses; specifically,, Exhibit B, Exhibit Q1, and Exhibit Q2.**

13. Any non-privileged correspondence with any person regarding the allegedly fraudulent electronic funds transfers.

**RESPONSE:**

**Without waiving any objections, Plaintiff refers Defendant to the documents attached to these responses which constitute the responsive documents that are in Plaintiff's care, custody and control following a reasonable and diligent search.**

14. Copy of any employee training/guidance/information regarding electronic funds transfers that Ash has made available to its employees from January 1, 2018 to the present.

**RESPONSE:**

**Plaintiff directs Defendant to its responses to Interrogatory Nos. 10, 11, 12, 13, 14, and 15. Without waiving any objections, Plaintiff, after a reasonable and diligent search, has determined that no documents or other tangible materials responsive to this request, are within Plaintiff's care, custody, or control.**

15. Copy of any employee training/guidance/information regarding phishing or email scams that Ash has made available to its employees from January 1, 2018 to the present.

**RESPONSE:**

**Plaintiff directs Defendant to its responses to Interrogatory Nos. 10, 11, 12, 13, 14, and 15. Without waiving any objections, Plaintiff, after a reasonable and diligent search, has determined that no documents or other tangible materials responsive to this request, are within Plaintiff's care, custody, or control.**

13

**Exhibit M**

16. The curriculum vitae of every expert witness retained to testify at the trial of this case as well as a copy of any and documents provided the expert and any communications with the expert.

**RESPONSE:**

**Plaintiff objects to this Interrogatory to the extent it attempts to seek information required to be produced by Section 4(c)(i)(6) of the Case Management Order entered by consent of the parties and issued by the Court on October 1, 2020, which Plaintiff fully intends to comply with regarding the disclosure of the witnesses it intends to call at trial at the appropriate time. Without waiving any objections, Plaintiff contends that it has not identified any expert witnesses that it intends to call at trial at this time.**

## REQUESTS FOR ADMISSION

1. Ash initiated the Electronic Funds Transfers identified in the Complaint.

**RESPONSE:**

**Admitted.**

2. Ash sent the Electronic Funds Transfers to the account number identified in the email(s) from ndoshi@niravvgroup.com.

**RESPONSE:**

**Admitted that Plaintiff entered the account number identified in the email from @niravvgroup.com, and it is further admitted that Plaintiff included Nirav's name as the beneficiary name, in addition to listing Nirav's address as the beneficiary address in the instructions.**

3. The emails from ndoshi@niravvroup.com were phishing emails.

**RESPONSE:**

**Plaintiff objects on the grounds that it is unable to admit or deny Request for Admission No. 3 as it does not define "fishing emails", and therefore this Request is denied.**

14

**Exhibit M**

4.    When Ash sent the Electronic Funds Transfers, the account number and account beneficiary did not match. Specifically, the account was not owned by Nirav Ingredients.

**RESPONSE:**

Plaintiff objects to Request for Admission No. 4 on the grounds that Plaintiff does not maintain an account with Defendant but knew to put Nirav's name and address as the beneficiary in order to avoid any confusion that might arise in the transfer and this Request is therefore misleading in that it implies that the account number and beneficiary could be knowingly "not matched", and therefore this Request is denied.  Plaintiff further objects and denies Request for Admission No. 4 on the grounds that Defendant has refused and failed to provide information regarding the beneficiary name that was on the account to which the funds were actually and wrongfully transferred, and therefore Plaintiff is without sufficient information to admit or deny this Request.

5.    The funds Ash sent were deposited in the account number identified in the wire instructions.

**RESPONSE:**

Plaintiff objects to Request for Admission No. 5 on the grounds that Defendant has refused and failed to provide information regarding the account where the funds were actually and wrongfully deposited, outside of correspondence constituting a denial of wrongdoing and a refusal to assist in investigating the fraudulent transfer, and Plaintiff is therefore without sufficient information to admit or deny this request and it is therefore denied.

6.    The Electronic Funds Transfers were automated.

**RESPONSE:**

**Exhibit M**

**Admitted, upon information and belief.**

7.      Ash did not interact or talk with any Wells Fargo employee when preparing or sending the electronic funds transfers.

**RESPONSE:**

**Admitted.**

RESPECTFULLY SUBMITTED,

This the 1st Day of December, 2020.

s/ Corey V. Parton

Corey V. Parton, N.C. Bar 45682
Attorney for Plaintiffs
Parton & Associates, PLLC
122 North McDowell Street
Charlotte, North Carolina 28204
Telephone: (704) 376-4488
Fax (704) 731-0904
E-mail: Parton@PartonNC.com

16

NIRAV INGREDIENTS, INC. and ASH INGREDIENTS, INC., )
)
)
Plaintiffs, )
)
v. )
)
WELLS FARGO BANK, N.A. and JOHN DOE(S), )
)
)
Defendants. )

**PLAINTIFF ASH INGREDIENTS, INC.'s SUPPLEMENTAL RESPONSES TO DEFENDANT WELLS FARGO BANK, N.A. FIRST SET OF DISCOVERY REQUEST**

**NOW COMES** Plaintiff Ash Ingredients, Inc. (hereinafter referred to as "Ash" or "Plaintiff" to answer Defendant Wells Fargo Bank, N.A.'s (hereinafter referred to as "Wells Fargo" or "Defendant") First Discovery Requests (hereinafter referred to as "Discovery Requests" to Plaintiff as follows:

## INTERROGATORIES

1. Identify any and all written contracts between you and Wells Fargo.

**RESPONSE:**

**Plaintiff objects to this Interrogatory on the grounds that the information requested is more readily and easily obtainable from another source: Defendant. Defendant is a large multi-national corporation who provides banking services to hundreds of thousands of individuals and businesses for a profit; and, as such, they should have a system and process for easily and readily identifying all written contracts with their customers like Plaintiff. Defendant is in much better position to accurately identify**

**Exhibit M**

every document that was signed by Plaintiff over the course of their customer-relationship ie. in a branch, on the internet etc. Without waiving any objections, Plaintiff has been unable to locate or identify the specific written contracts that it had with Defendant after a reasonable diligent inquiry. Plaintiff reserves the right to supplement this response as new information becomes available through further investigation and discovery.

SUPPLEMENTAL RESPONSE:

Ash Ingredients, Inc. to this date has had no banking relationship with Wells Fargo Bank and therefore does not have possession, custody, or control of any written contracts between Wells Fargo and Ash Ingredients, Inc. To the best of Ash Ingredients, Inc.'s knowledge, no such written contracts exist.

4. Identify any contracts between Ash and Nirav from January 1, 2018 to present.

RESPONSE:

Plaintiff objects on the grounds that this Interrogatory calls for a legal conclusion about whether a legal contract existed, and Plaintiff is not qualified or capable of rendering such an opinion nor is it Plaintiff's role to do so in a legal proceeding, and therefore no response is required. Without waiving any objections, Plaintiff contends that there are no written contracts that are responsive to this Interrogatory.

**SUPPLEMENTAL RESPONSE:**

Ash Ingredients, Inc.'s had a number of purchase orders with Nirav Ingredients, Inc. between January 1, 2018 and present. These purchase order constitute all the contracts that exist between Ash Ingredients, Inc. and Nirav Ingredients, Inc. during the requested time period. True and accurate copies of each purchase order that is within the care, custody, or control of Ash Ingredients, Inc. have been attached as Exhibit 1, which is incorporated herein by reference. Ash Ingredients, Inc. is not aware of any other contracts that exist with Nirav Ingredients, Inc. during the requested time period.

11. Does Ash offer training (via internal programming or outside conferences, etc.) to employees regarding electronic funds transfers and/or the FedWire system? If so, please describe the training. If so, explain the training and guidance in detail.

**RESPONSE:**

Without waiving any objections, Plaintiff refers Defendant to Plaintiff's response to Interrogatory No. 12, and further contends that no employee of Plaintiff had access to Plaintiff's business account at Citi Bank Business other than Anil Kripalani (President) and Shawn Kripalani (CEO), and therefore no such employee training was necessary and did not take place.

44322627 v1

**Exhibit M**

**SUPPLEMENTAL RESPONSE:**

Since the only two persons within Ash Ingredients, Inc. authorized or able to perform wire transfers are Shawna Kripalani (CEO) and Anil Kripalani (President), Ash Ingredients, Inc. does not offer or provide any training to employees regarding electronic transfers or the Fedwire system. Shawna Kripalani and Anil Kripalani each have approximately 15 years of experience in executing wire transfer payments through Citibank. For security, both individuals are assigned a unique token and password used to facilitate wire transfer payments. Otherwise, Ash Ingredients, Inc. Has not offered or provided any training to these individuals in relation to electronic transfers or the Fedwire system.

14. Describe Ash's basis for alleging that Wells Fargo is aware that its "processes and procedures have allowed for repeated abuse of its system to conduct and facilitate fraudulent wire transfers."

**RESPONSE:**

Without waiving any objections, Plaintiff directs Defendant to Paragraphs 27, & 41-45 of Plaintiff's Complaint.

**SUPPLEMENTAL RESPONSE:**

On or around September 10, 2019 the US Federal Bureau of Investigation issued a Public Service Announcement (PSA) regarding Business Email Compromise/Email Account Compromise (BEC/EAC), which the FBI describes as a sophisticated scam that targets both businesses and individuals who perform legitimate transfer-of-funds requests and is frequently carried out when a subject compromises legitimate business or personal email accounts through social engineering or computer intrusion to conduct unauthorized transfers of funds. Upon information and belief, the BEC/EAC scams referenced in the FBI's PSA accurately and fairly describe the transaction which is the subject of Plaintiffs' Complaint. According to the FBI, BEC/EAC scams have continued to grow and evolve, targeting small, medium, and large business and personal transactions. Between May 2018 and July 2019, there was a 100 percent increase in identified global exposed losses from such scams, which have been reported in all 50 states and 177 countries. The FBI reports that between October 2013 and July 2019 there were 69,384 US victims whose total exposed dollar loss was $10,135,319,091. Upon information and belief, a significant portion of these victims banked with Wells Fargo, and Wells Fargo were, or should have been, aware of the prevalence of BEC/EAC scams of the type that underly Plaintiffs' Complaint. Upon information and belief, Wells Fargo knew, or should have been aware, of the contents of the FBI's September 10, 2019 FBI PSA, and may have even provided data regarding BEC/EAC scams which contributed to the PSA, since the PSA is based on part on complaint data and filings from financial institutions. Furthermore, Wells Fargo's own website states that 82% of businesses are targeted by BEC scams and that there was a 64% increase in the amount of BEC fraud between 2014 and 2018.

Case 3:20-cv-00366-FDW    Document 27-13    Filed 04/14/21    Page 22 of 24

Ash Ingredients, Inc. alleges that despite what it knew, or should have known, Wells Fargo failed to implement safeguards, processes, or procedures adequate to protect its customers against BEC/EAC scams. For example, Ash Ingredients, Inc. alleges that Wells Fargo recommends protective steps that its business customers should take which are inconsistent with, or fall short of, the recommendations from reputable, researched organizations like the FBI and Better Business Bureau. Ash Ingredients, Inc.'s investigation into these allegations is ongoing, and it is believed that further information regarding Wells Fargo's knowledge of BEC/EAC scams and failure to safeguard their customers will be obtained through discovery.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Every Document related to the Electronic Funds Transfers identified in the Complaint.

   **RESPONSE:**

   Without waiving any objections, and to the extent such responsive documents exist within the reasonable custody, care and control of Plaintiff directs Defendant to the documents attached to these Discovery Responses, specifically: Exhibit A, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit M1, and Exhibit M2.

   **SUPPLEMENTAL RESPONSE:**

   An updated copy of the Wells Fargo's *Wire transfer quick reference guide for customers* (2 total pages), which was previously identified as Exhibit A in Ash Ingredients, Inc.'s initial discovery response, is attached hereto as Exhibit 2.

   Wells Fargo's Wire Transfer Terms and Conditions, which is referenced in Exhibit M1 to Ash Ingredients, Inc.'s initial discovery responses, is available online using the following link: https://www.wellsfargo.com/online-banking/transfers/online-wires-terms The foregoing link is also available and accessible in Exhibit M1 itself.

Case 3:20-cv-00366-FDW    Document 27-13    Filed 04/14/21    Page 23 of 24

RESPECTFULLY SUBMITTED,

This the 20th Day of January, 2021.

s/ Corey V. Parton

Corey V. Parton, N.C. Bar 45682
Attorney for Plaintiffs
Parton Law, PLLC
122 North McDowell Street
Charlotte, North Carolina 28204
Telephone: (704) 376-4488
Fax (704) 731-0904
E-mail: Parton@PartonNC.com